**EVERGREEN CEMETERY ASSOCIA-TION OF SEATTLE, a corpora-tion, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 7206.**

United States District Court
W. D. Washington, N. D.

May 15, 1969.

Joseph D. Holmes, Jr., of Karr, Tuttle, Campbell, Koch & Campbell, Seattle, Wash., for plaintiff.

Eugene G. Cushing, U. S. Atty., and Albert E. Stephan, Asst. U. S. Atty., and by W. Forbes Ramsey, Tax Division, Dept. of Justice, Washington, D. C., for the United States.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

LINDBERG, Chief Judge.

This cause having come on regularly for trial on February 10, 1969 before the court without a jury, and the court having heard the evidence and the argument of counsel, and having considered the findings of fact and conclusions of law proposed by each of the parties, and being well advised, makes the following

### FINDINGS OF FACT:

1.

This is a civil action in which plaintiff, Evergreen Cemetery Association of Seattle (hereinafter referred to as the "Association") seeks to recover federal income taxes for the years 1963 and 1964 in the amounts of $45,242.97 and $4,972.00, respectively, which were assessed and collected by the defendant, together with statutory interest thereon (paragraph 3 of pretrial order—jurisdiction).

**2.**

The Association was organized as a Washington non-profit and non-stock corporation on June 22, 1946, for the purposes of operating a cemetery (although in fact it has never operated a cemetery) and in particular of furnishing perpetual care and maintenance to the grave sites located in Evergreen Memorial Park, which is a cemetery property located in King County, Washington. Its principal place of business is at 11111 Aurora Avenue North, Seattle, Washington (exhibit 1; paragraph 2 of pretrial order—jurisdiction).

**3.**

The Association filed United States corporate income tax returns (Treasury Form 1120) for each of the years 1963 and 1964. Timely claims for refund of the federal income taxes and accrued interest were also filed by the Association which were disallowed in full by the District Director of Internal Revenue, Tacoma, Washington on June 1, 1967, (paragraphs 4, 5 and 6 of pretrial order—jurisdiction).

**4.**

Evergreen Cemetery Company of Seattle is a profit-making Washington corporation engaged solely in the cemetery business. Evergreen Cemetery Company of Seattle, hereinafter sometimes called the "Cemetery Company", operates three cemeteries: Evergreen Memorial Park, Washelli Cemetery and Abbey View Memorial Park. Each of these cemeteries has been placed under endowment care (paragraph 1 of pretrial order).

**5.**

The Cemetery Company is in the business of selling cemetery lots and burial crypts and niches, preparing graves for burial, selling monuments and operating a flower shop (paragraph 3 of pretrial order; testimony of J. Hackett). The Cemetery Company has filed federal income tax returns for each year of its existence (paragraph 4 of pretrial order).

**6.**

On or about August 15, 1940, the Cemetery Company established a perpetual care fund known as the "Perpetual Care Fund of the Evergreen Cemetery Company of Seattle." The Perpetual Care Fund of the Evergreen Cemetery Company of Seattle was established by a trust agreement dated August 15, 1940, between the Cemetery Company as grantor and Day Karr, S. W. Barker and C. S. Harley as trustees (paragraph 2 of pretrial order). This trust agreement recited that the trust was formed because the Cemetery Company desired to make provision for the perpetual care and maintenance of Evergreen Memorial Park (exhibit 5).

**7.**

At the time the Perpetual Care Fund of the Evergreen Cemetery Company of Seattle was established on August 15, 1940, the Cemetery Company delivered to the trustees certain assets which it had previously held in trust for endowment care of burial lots which it had sold in Evergreen Memorial Park. In addition, the trustees were specifically authorized to accept future additions of property to be held solely for the purposes of the fund (paragraph 5 of the pretrial order).

**8.**

On or about April 24, 1943, this trust agreement was replaced by a second trust agreement entered into by the same parties. This second trust agreement withdrew some of the powers which the Cemetery Company had over the trust fund (exhibit 6).

**9.**

Under the terms of contracts for the sale of cemetery lots and burial crypts and niches in Evergreen Memorial Park, the Cemetery Company has agreed with the purchasers that the final 10% of the

sales proceeds will be delivered to the trust to be used for endowment care and the Cemetery Company has delivered such portions of the sales price of each cemetery lot and burial crypt and niche sold in Evergreen Memorial Park to the care fund (paragraph 6 of pretrial order; testimony of J. Hackett and W. Scott and exhibits 8 and 44–51).

### 10.

The sales contracts used during the 25 years from 1939 to 1964 provide that the purchasers will receive perpetual care in accordance with the rules and regulations of the Cemetery Company which limit care and maintenance to the income of the endowment care fund. The perpetual care was emphasized by the Cemetery Company in attempting to sell lots and was essential to the successful sale of the cemetery lots by the Cemetery Company (exhibits 8, 44–51; testimony of W. Scott).

### 11.

On or about June 20, 1946, the trustees of the Perpetual Care Fund of the Evergreen Cemetery Company of Seattle, caused the Association to be organized for the purposes of succeeding to the assets, liabilities, rights and duties of the Perpetual Care Fund of the Evergreen Cemetery Company of Seattle (paragraph 7 of pretrial order; exhibit 1, article IV).

### 12.

On December 31, 1946, the trustees of the Perpetual Care Fund of the Evergreen Cemetery Company of Seattle entered into an agreement with Evergreen Cemetery Association of Seattle and the Cemetery Company (paragraph 8 of pretrial order; exhibit 9).

### 13.

Pursuant to the terms of the December 31, 1946, agreement the trustees transferred and delivered to the Association all of the assets of the trust and the Association accepted such assets and agreed to administer them in accordance with the terms of the April 24, 1943, trust agreement (paragraph 8 of pretrial order).

### 14.

Each living owner of a cemetery lot and burial niche or crypt in Evergreen Park is a member of the Association and is entitled to cast one vote in connection with the affairs of the Association (paragraph 9 of pretrial order; exhibit 1).

### 15.

Regular and special meetings of the members of the Association have been held each year since 1946. Notices of each of these meetings have been published in a newspaper of general circulation regularly published and circulated in King County, Washington, not less than 10 days nor more than 20 days prior to the date of each meeting (paragraph 10 of pretrial order).

### 16.

C. Frederick Harley, C. S. Harley, Payne Karr, Winston Scott, Philip A. Strack and Nelson Wahlstrom were the trustees of the Association during the years 1963 and 1964. Each of the trustees except Philip A. Strack was a stockholder of the Cemetery Company and on the Board of Directors of the Cemetery Company. C. Frederick Harley, C. S. Harley and Winston Scott were employees of the Cemetery Company. Payne Karr was a practicing attorney who handled the legal affairs of the Cemetery Company and the Association. Philip A. Strack was president of Peoples National Bank of Washington and Nelson Wahlstrom was comptroller of the University of Washington (paragraph 11 of pretrial order; exhibit A–1; testimony of W. Scott).

### 17.

Each of the trustees was paid a nominal fee during the years 1955 to 1964, solely for services rendered to the Association. No other item of income, as that term is defined for federal income

tax purposes, was paid to any officer, trustee or member of the Association during the years 1955 to and including 1964 (paragraph 12 of pretrial order; exhibit 10).

18.

Under the terms of the contracts for the sale of cemetery lots and burial crypts and niches in Evergreen Memorial Park the Cemetery Company has agreed with the purchaser that the final ten percent of the sales proceeds will be delivered to the trust to be used for endowment care and this agreement has been consistently followed by the Cemetery Company (paragraph 6 of the pretrial order; testimony of J. Hackett and W. Scott; exhibits 8, and 44 through 51).

19.

At all times from 1940 to 1964, the principal of the trust fund maintained by the Association and all amounts of income earned prior to delivery of the income to the Cemetery Company have been maintained in separate accounts with independent third parties not related in any manner to the Cemetery Company or the Association. During 1963 the custodian of the investment funds of the Association was the Peoples National Bank of Washington, Main Office, Seattle, Washington, and for 1964 it was Dominick and Dominick, Norton Building, Seattle, Washington. The following are the principal balances of the trust fund as of the end of each of the years 1955 to 1964.

| YEAR | AMOUNT |
|---|---|
| 1955 | $350,313.54 |
| 1956 | $379,662.46 |
| 1957 | $404,714.50 |
| 1958 | $439,915.73 |
| 1959 | $470,655.81 |
| 1960 | $511,777.25 |
| 1961 | $556,668.70 |
| 1962 | $607,938.45 |
| 1963 | $815,722.84 |
| 1964 | $854,107.92 |

(paragraph 14 of pretrial order and exhibit 12).

20.

Each year since the formal organization of the Perpetual Care Fund of the Evergreen Cemetery Company of Seattle trust on August 15, 1940, and the organization of the Association on December 31, 1946, to and including 1964, all of the income from the trust has been paid to the Cemetery Company and has been used solely and exclusively for the care and maintenance of Evergreen Memorial Park. The following is a schedule of the amounts delivered by the Association to the Cemetery Company in each of these years:

| YEAR | AMOUNT |
|---|---|
| 1940 | $ 1,456.29 |
| 1941 | $ 3,168.43 |
| 1942 | $ 2,989.77 |
| 1943 | $ 3,416.35 |
| 1944 | $ 3,421.47 |
| 1945 | $ 3,557.66 |
| 1946 | $ 3,584.71 |
| 1947 | $ 4,096.33 |
| 1948 | $ 4,356.50 |
| 1949 | $ 4,718.16 |
| 1950 | $ 8,891.98 |
| 1951 | $ 9,645.57 |
| 1952 | $11,476.88 |
| 1953 | $15,817.36 |
| 1954 | $19,209.67 |
| 1955 | $20,957.94 |
| 1956 | $22,094.78 |
| 1957 | $23,405.16 |
| 1958 | $21,173.72 |
| 1959 | $22,749.16 |
| 1960 | $24,116.24 |
| 1961 | $25,934.79 |
| 1962 | $29,736.80 |
| 1963 | $38,681.35 |
| 1964 | $45,725.48 |

(paragraph 13 of pretrial order; exhibit 11; testimony of J. Hackett; W. Scott and O. Parrott; exhibits 40 and 41).

21.

During 1963 and 1964 the Association had net capital gains of $180,971.89 and

$61,228.00, respectively, from the sale of securities of the endowment care fund (exhibits 3 and 4). These securities were sold because while they had experienced capital appreciation they were not good income producing securities. Funds derived from the sales of securities were reinvested in higher income producing securities with capital gains potential (testimony of W. Scott). The trust agreements of 1940 and 1943 require all capital gains to be added to principal (exhibit 5, paragraph 13(5); exhibit 6, paragraph 12(5)).

### 22.

The 1943 trust agreement provides that if the Cemetery Company failed to properly look after the permanent care of Evergreen Memorial Park then the trustees are authorized to assume direct control over and responsibility for care and maintenance (exhibit 6, paragraph 27).

### 23.

During the years in question, the books of the Cemetery Company showed the sale of lots and the segregation of the ten percent of the sales price to be paid for endowment care; collection of the ten percent by the Cemetery Company and its payments to the Association. The Association would submit the funds to the custodian. At the end of each month the custodian would send a check to the Cemetery Company for the amount of income from the funds for that month. This check would be deposited in the General Bank Account of the Cemetery Company. This transaction would be reflected on the books of the Association as the receipt of income and an immediate expenditure in the same amount for care and maintenance. Actual maintenance expenses as they accrued each month were not billed or checked but yearly maintenance costs have been appreciably larger than yearly income. The books of the Association were kept by the bookkeeper of the Cemetery Company in an office provided by the Cemetery Company (testimony of J. Hackett).

### 24.

At the end of each year the Cemetery Company furnished a letter to the Association and to the Washelli Cemetery Association, which is a corporation identical to the plaintiff Association that handles endowment care for Washelli Cemetery. This letter sets forth the cost of maintaining the two cemeteries, the combined income from the two endowment care associations, the amount expended by the cemetery on maintenance and care and an approximation of the deficiency in maintenance income provided by the two endowment care associations (exhibits 37 and 38). In every year up to the present time the cost of maintaining the cemetery has so far exceeded the income from the two endowment care associations that it has been unnecessary to segregate the expenses of the two cemeteries or to segregate the income from the two funds.

### 25.

The income and principal endowment care fund of the Association are exclusively and irrevocably committed to providing care and maintenance of Evergreen Memorial Park (exhibits 1, 2, 5, 6 and 9).

## CONCLUSIONS OF LAW:

### 1.

Evergreen Cemetery Association is organized under the laws of the State of Washington as a non-profit corporation and chartered solely for burial purposes as a cemetery corporation. It is not permitted by its charter to engage in any business not necessarily incident to burial purposes.

### 2.

The Association was organized for the purpose of administering the cemetery endowment care trust established to provide perpetual care and maintenance of the Evergreen Memorial Park cemetery which has been undertaken by the Association.

**3.**

Administration of the income and principal corpus of the endowment care trust fund by the Association is specifically regulated by the Cemetery Code of the State of Washington which limits the use of income from the fund to care and maintenance of the cemetery and requires that the principal corpus be exclusively and perpetually maintained to provide income for care and maintenance of the cemetery.

**4.**

The Association is owned and operated exclusively for the benefit of its members, the lot owners in Evergreen Cemetery Memorial Park.

**5.**

The owners of burial lots, crypts and niches in Evergreen Memorial Park and the general public are the beneficiaries of the endowment care trust administered by the Association.

**6.**

The income and principal of the endowment care trust fund administered by the Association are exclusively and irrevocably committed to providing care and maintenance of the Evergreen Memorial Park cemetery and can be used for no other purpose.

**7.**

Payment of the income of the endowment care trust fund to Evergreen Cemetery Company of Seattle (the Cemetery Company) is only for services rendered and to be rendered to the Association and lot owner members of the Association in caring for and in maintaining the Evergreen Memorial Park cemetery.

**8.**

During 1963 and 1964 the income of the endowment care trust fund was used exclusively for care and maintenance of the Evergreen Memorial Park cemetery.

**9.**

Neither the Association nor the endowment care trust fund administered by the Association are operated for profit.

**10.**

During 1963 and 1964 the Association realized capital gains from the sale of securities which were held as part of the principal corpus of the endowment care trust fund. Capital gains cannot be distributed as income for perpetual care and maintenance.

**11.**

The capital gains realized by the Association in 1963 and 1964 were added to the principal corpus of the endowment care trust fund and were permanently set aside to maintain Evergreen Memorial Park Cemetery.

**12.**

The taxes which the Association is seeking to have refunded are based solely on the capital gains reported by the Association for 1963 and 1964.

**13.**

Evergreen Memorial Park Cemetery is a cemetery operated for profit.

**14.**

Care and maintenance as provided by plaintiff to Evergreen Memorial Park Cemetery so long as the Cemetery is operated for profit, does not constitute charitable purpose, as that term is defined or used in sections 501(c) (3) and 642(c) of the Internal Revenue Code of 1954 (26 U.S.C.A. §§ 501(c) (3) and 642(c)).

**15.**

The endowment care trust fund which the Association administers is not a "cemetery company" or a "corporation chartered * * * as a cemetery company" and is not entitled to a tax exemption under section 501(c) (13) of the Internal Revenue Code of 1954 (26 U.S.C.A. § 501(c) (13)).

**16.**

Evergreen Cemetery Association is not entitled to a refund from the defend-

ant of all taxes paid defendant for 1963 and 1964.

### 17.

Judgment should be entered for the defendant and the plaintiff's cause and action dismissed with prejudice.