**WASHINGTON TRUST BANK, as Trustee of the Endowment Care Fund of Greenwood Memorial Terrace Company, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 3200.

United States District Court
E. D. Washington,
Northern Division.

July 10, 1969.

Reiley & Annis, Spokane, Wash., for plaintiff.

Johnnie M. Walters, Asst. Atty. Gen., Jerome Fink and John M. Kirk, Attys., Dept. of Justice, Washington, D. C., Dean C. Smith, U. S. Atty., Spokane, Wash., for defendant.

## OPINION

## NATURE OF PROCEEDINGS

EAST, District Judge.

The Washington Trust Bank, as Trustee above (Trust Bank), seeks to recover on behalf of the Endowment Care Fund of Greenwood Memorial Terrace Company (Greenwood Trust) a refund of federal income taxes paid to the United States of America (Government) for the calendar years of 1963 and 1964 in the amounts of $21,819.95 and $5,162.65, respectively, together with interest thereon as allowed by law.

This Court has jurisdiction under the provisions of Title 28, United States Code Section 1346.

## ISSUES OF LAW

1. Whether Greenwood Trust is exempt from federal income taxation under Section 501(a) of the Code as a "cemetery compan(y) * * * which * * * (is) * * * not operated for profit; * * *" described in Section 501(c) (13).

2. Whether Trust Bank can raise in its P.T.O. Contentions and advance at trial, as alternative grounds for recovery, subsections of the Internal Revenue Code which were not specifically set forth in their claims for refunds, namely:

(a) Whether Greenwood Trust qualified for federal tax exemption as a charitable trust described in Section 501(c) (3) of the Internal Revenue Code of 1954.

(b) Whether Greenwood Trust is entitled to a Section 642(c) deduction for capital gains realized in 1963 and 1964 as amounts permanently set aside for charitable uses.

## FINDINGS OF FACT

I find from the admitted facts contained in the pretrial order and all of the evidence in the case that:

1. At all times material herein, Greenwood Memorial Terrace Company or its predecessors (Greenwood Corporation) was a Washington profit-making corporation, with its principal place of business in Spokane, Washington, engaged in the operation of a cemetery and related services near Spokane, Washington, since the early 1890's;

2. As a part of its operation Greenwood Corporation sells burial lots and mausoleum compartments, however, does not promise or agree to provide perpetual care for the same;[1]

3. Greenwood Trust was created by a trust agreement dated December 16,

---

[1]. Greenwood Corporation carries on two generalized types of sales programs, namely "pre-need space" and "at need space." The "pre-need" program involves undeveloped land, and the sales program emphasizes the future planning feature. A great majority of these sales are made under a typical time-payment plan and provides liberal exchange privileges for "at need space." The contractual provisions with reference to future permanent care are contained in the following paragraph:

"It is agreed and understood that GREENWOOD MEMORIAL TERRACE COMPANY is operated as an endowment care cemetery, which means that an 'Endowment Care Fund' has been established in conformity with prudent cemetery management. 'Endowment Care' means to keep the sod in repair in all places where inter-

ments have been made; to care for trees and shrubs planted by the cemetery; to maintain all roads, curbs, gutters, drains, water lines, entrance ways and to maintain a file of records pertinent to all lot owners and interments." (Government selected Tr. Ex. 101.)

The purchaser's contribution or payment to the Endowment Fund is a stated sum, as in Tr. Ex. 101:

"Minimum Developed Price $360— Endowment Care 36—."

The time-payment provision provides that:

" * * * All payments shall be applied first on any interest then due, then on purchase price of the property, and then on the deposit to the Endowment Care Fund."

The "at need" sales program deals with improved and developed cemetery lots

1938, by and between Greenwood Cemetery Association (a predecessor of the Greenwood Corporation) and John McKinley, T. J. Meenach and William A. Corey as Trustees, as a perpetual trust fund for the care and maintenance of the cemetery owned and operated by the Greenwood Corporation (Tr. Ex. 1);

4. The original trust agreement was amended for the first time on January 19, 1961, to designate The Old National Bank of Spokane as successor trustee (Tr. Ex. 2)[2] and again amended on December 14, 1961 (Tr. Ex. 3);

5. The Amendment of January, 1961, acknowledges that the maintenance and operation of Greenwood Trust had been and was regulated by the General Cemetery Act of the State of Washington, R.C.W. 68.44.010 et seq.;

6. In 1961 the Greenwood Trust applied to Internal Revenue Service for an exemption from federal income taxation as a cemetery company under the provisions of Section 501(c) (13). The application was denied, and the trustees were formally notified of the denial of their application for an exemption by letter dated August 25, 1961 (Tr. Ex. 16);

7. The Old National Bank of Spokane acted as trustee of the Greenwood Trust from January 19, 1961, until July 9, 1963, when the board of directors of the Greenwood Corporation unanimously adopted a resolution appointing Mason Letteau, Ronald C. Waranch, and A. J. Dietsch as successor trustees (Tr. Ex. 5) who served as trustees of the Trust Fund until January 4, 1966, when Ronald C. Waranch and A. J. Dietsch resigned and were replaced by Betty Letteau and J. R. MacFadden (Tr. Ex. 6) who, along with Mason Letteau, served as trustees from January 4, 1966, until March, 1968;

8. The present trustee (Trust Bank) was appointed by order of the Superior Court of Spokane County on or about March 22, 1968, and the Superior Court approved a new Trust Agreement on April 30, 1968 (Tr. Exs. 7 and 8).

9. The Greenwood Corporation was reorganized and its stock changed hands on July 20, 1962, and from then on through January, 1966, the following persons served as officers of the Greenwood Corporation and as members of its board of directors:

Directors

Paul W. Trousdale (Chairman)
Mason Letteau
R. C. Waranch
A. J. Dietsch
W. J. Carlson
Herbert Meline (until 5/14/64)

---

ready for occupancy, (Government-selected Tr. Ex. 102), and is a present sale. The sales agreement is silent as to future permanent care and maintenance except for the bold-type wording at the bottom as follows: "ENDOWMENT CARE PROPERTIES (Over One Million Dollars In Endowment Care Trust Fund)" and the acknowledgment of the payment of "Property $40.00" and "Deposit in Endowment Care Fund ($) 4.00."

2. The succeeded trustees transferred all their right, title and interest in and " * * * to the assets now held in (the) Greenwood Cemetery Association Perpetual Care Fund Trust, * * *" and the Association agreed " * * * to pay over sums to the Trustee from time to time as the same shall be received by the Association as payments for endowment care, which payments shall in no case be less than the amounts required to be deposited in the endowment care funds by endowment care cemeteries under the General Cemetery Act of the State of Washington as the same may be amended from time to time."

Paragraph (2) of the Amendment provides:

"All such sums paid to the Trustee hereunder shall be held and managed by the Trustee, and the Trustee shall collect the income therefrom, and so use or apply the net income therefrom solely for the care, maintenance and embellishment of Greenwood Cemetery and its Mausoleum. The Trustee *shall have the right so to use and apply the net income,* or in *its discretion to pay the same over to the Association to be used by it solely for the purpose of caring for, maintaining and embellishing said Cemetery and said Mausoleum.*" (Emphasis supplied.)

Officers

Paul W. Trousdale (Chairman, Board of Directors)
Mason Letteau (President)
R. C. Waranch (V. Pres., Treas.)
A. J. Dietsch (V. Pres., Secre.)
W. J. Carlson (V. Pres., Mgr.)
Allan H. Toole (Assist. Treas.)
William Pendell (Asst. Treas.)
Herbert Meline (V. Pres. until 5/14/64);

10. That except for the bare dual capacity as a trustee of the Greenwood Trust and a director of the Greenwood Corporation of Ronald C. Waranch, Mason Letteau and A. J. Dietsch, the management of Greenwood Corporation exercised no control or direction over the individual trustees in the management of the Greenwood Trust, particularly in determining the trust's investments;

11. The individual trustees retained the firm of Lionel D. Edie as an investment advisor, investment decisions were made by the trustees based on the advice of the Edie firm, the trustees invested in securities through the brokerage firm of E. F. Hutton & Company who held the portfolio in street name, and the fees of the Edie firm and the Hutton firm were paid by the trust;

12. On or about May 15, 1964, the trustees, Mason Letteau, Ronald C. Waranch, and A. J. Dietsch, filed the Trust Fund's U. S. Fiduciary Income Tax Return (Form 1041) for the calendar year 1963, with the District Director of Internal Revenue, Spokane, Washington, (Tr. Ex. 10) and paid tax shown due on the face of the return in the amount of $21,711.39, plus interest of $108.56 for late filing, for a total of $21,819.95;

13. On or about April 19, 1965, the trustees, Mason Letteau, Ronald C. Waranch, and A. J. Dietsch, filed the Trust Fund's U. S. Fiduciary Income Tax Return (Form 1041) for the calendar year 1964, with the District Director of Internal Revenue, Tacoma, Washington, (Tr. Ex. 11) and paid tax shown due on the face of the return in the amount of $5,162.65;

14. The trustees timely filed claims for refund (Forms 843) with the District Director of Internal Revenue, Tacoma, Washington, claiming a refund of all amounts paid by the Greenwood Trust for 1963 and 1964, wherein the trustees asserted as a ground for refund that during the years in question the Trust was an organization exempt from federal income taxation under the provisions of Section 501(c) (13) of the Internal Revenue Code of 1954 (Tr. Exs. 12 and 13);

15. The Internal Revenue Service notified the trustees by certified letters dated July 24, 1967, that their claims for refund were denied in full, and the Trust Bank timely brought this action for refund of the amounts claimed therein.

16. During the period in question, the Greenwood Corporation made timely monthly payments to Greenwood Trust of all amounts representing 10 per cent of the sales price of the burial sites and mausoleum spaces sold and for which complete payment had been received by the company during that month, and on installment sales, the company did not pay any portion of the sales price over to the Greenwood Trust until all of the installments had been paid, at which time the requisite 10 per cent of the sales price would be included in that month's payment to the Trust;

17. All payments made to the Greenwood Trust were made in accordance with the Washington statute and the terms of the contract of sale (Tr. Ex. 101);

18. The Greenwood Trust maintained a bank account and financial records separate and distinct from those of the Greenwood Corporation;

19. During the period in question, the Greenwood Trust made periodic disbursements of its net income to the Greenwood Corporation, upon receipt the Greenwood Corporation deposited these amounts in a general bank account comingling general corporate funds, and all of the Greenwood Corporation's ex-

penses (with the exception of wages) were paid out of this account;

20. During the years in question, and in all prior years, the amounts expended by the Greenwood Corporation for maintenance and care of the cemetery far exceeded the yearly income paid to the Greenwood Corporation by Greenwood Trust (Tr. Ex. 9), and Greenwood Corporation made no charges against the Greenwood Trust income so paid on account of its overhead or other management or capital outlay;

21. The amounts reported on the tax returns in issue in this action as "income" are attributable to capital gain realized on the sale of trust assets, and said amounts were allocated to and retained by the trustees as corpus under the terms of the Trust Agreement.

## CONCLUSIONS OF LAW

From the foregoing Findings of Fact, I conclude as follows:

1. Capital gains are not expendable income of Greenwood Trust but are accretions to and become a part of the corpus of the trust.

2. The Greenwood Trust, under Washington State law and its direct trust agreement terms, is under an obligation to the lot owners to and did apply all its income, less allowable management expense, to the perpetual care and maintenance of Greenwood Corporation's cemetery,[3] and the application of the net income (ascertained as above) of the Greenwood Trust by the trustees to the Greenwood Corporation is in the nature of payment for services rendered by the Greenwood Corporation to the Trust and its beneficiaries in caring for and maintaining the lots and mausoleum space sold and the cemetery generally;

3. Under Washington State law, as dictated by R.C.W. 68.44.020, and the direct provisions of the Trust Agreement, the fund corpus of the Greenwood Trust has been at all times and is now required to "forever remain irreducible and inviolable" for the perpetual care of the cemetery,[4] and that neither the fund corpus nor any part thereof can ever inure to the benefit of the Greenwood Corporation or its shareholders, except as incidental to the lot and space owners and general public benefit;

4. Greenwood Corporation is not a beneficiary of Greenwood Trust;

5. The true and real beneficiaries of the Greenwood Trust are the purchasers of the burial lots and mausoleum space and the general public.[5]

6. The Greenwood Trust is a "cemeter(y) * * * which (is) * * * not operated for profit; * * *" within the reading and meaning of the second of three separate and distinct grounds for exemption contained in Section 501(c) (13), and by reason thereof is exempt from federal income tax under Section 501(a) of the Internal Revenue Code of 1954;

7. The action of the Internal Revenue Service in denying Greenwood Trust's application for exempt status (Finding of Fact No. 6) was contrary to law, and is therefore arbitrary;

8. The Trust Bank is entitled to a refund of the taxes paid together with interest thereon as allowed by law as contended for in the pretrial order.

---

3. "The income from the endowment care fund shall be used solely for the general care, maintenance, and embellishment of the cemetery * * * " R.C.W. 68.44.170.

4. The taxation of capital gains invades and reduces the fund corpus of the Greenwood Trust and the Revenue Ruling 64–217 (infra) tends to vitiate the public policy of the State of Washington.

5. "The endowment care and special care funds and all payments or contributions thereto are hereby expressly permitted for charitable and eleemosynary purposes. Endowment care and such contributions are provisions for the discharge of a duty from the persons contributing to the persons interred and to be interred in the cemetery and provisions for the benefit and protection of the public by preserving and keeping cemeteries from becoming unkempt and places of reproach and desolation in the communities in which they are situated. * * * " R.C.W. 68.44.-070 (Emphasis added.)

## DISCUSSION

*Conclusions of Law Nos. 1, 2, 3, 7 and 8:*

Suffice, in my opinion, the Conclusions of Law are self-evident.

*Conclusions of Law Nos. 4, 5 and 6:*

Commissioner of Internal Revenue v. Kenisco Cemetery, 96 F.2d 594, at page 596 (2d Cir. 1939) tells us:

> "There are three statutory requisites for exemption and these are mutually independent. The presence of any one of them creates an exemption."

See also Rose Hill Memorial Park, Inc. v. Comm., 23 TCM 1434 (1964) and Forest Lawn Memorial Park Association, Inc., v. Comm. of Internal Revenue, 45 BTA 1091 (1941). I am of the opinion that those requisites for exemption contained in Sec. 501(c) (13) are to be liberally construed as Helvering v. Bliss, 293 U.S. 144, 55 S.Ct. 17, 79 L.Ed. 246 (1934) teaches us:

> " * * * The exemption of income devoted to charity and the reduction of the rate of tax on capital gains were liberalizations of the law in the taxpayer's favor, were begotten from motives of public policy, and are not to be narrowly construed. * * * "

I am not unmindful that Rosehill Cemetery Company, as Trustee, v. United States of America, 285 F.Supp. 21, D.C. (N.D.Ill.E.Div.) (2–14–68), and Evergreen Cemetery Association of Seattle v. United States of America, 302 F.Supp. 720, lately adjudicated in the United States District Court for the Western District of Washington, Northern Division, appear to be contra to the above conclusion No. 6 as to Greenwood Trust's tax-exempt status.

I choose to be a follower of Denver United States National Bank as Trustee v. United States of America, 302 F.Supp. 801, United States District Court for the District of Colorado (6–4–65), as it seems to me that the factual situation in *Denver* is more akin to our situation here than either *Rosehill* or *Evergreen*.

*Rosehill* acknowledges in its election not to be a follower of *Denver* that *Denver* is distinguishable from its case in several *important respects* (emphasis supplied), saying:

> " * * * First, the trusts there were operated independently of the (cemetery operation company)—a bank, rather than the (cemetery operation company), was the trustee; second, the (cemetery operation company) appears to have had no role in the investment of funds, etc.; and again, the court there found that the trust income was used 'in its entirety' for the care and maintenance of the cemeteries * * * ."

The parallel of those facts in *Denver* and the foregoing Findings of Fact herein are obvious.

Another glaring distinction of this case from *Rosehill* is the performance by the fund of *Rosehill's* legal obligation and duty of perpetual care. The recital of the facts in *Rosehill* states inter alia:

> " * * * In connection with the sale of burial lots and mausoleum compartments, *it* (the operating cemetery company) *offers* for sale to the lot and compartment *owners its services* in caring for and maintaining the cemetery and the mausoleum." (Emphasis supplied.)

Also, in *Rosehill*, the operating cemetery company used the income supplied by the fund "to pay certain direct expenses, an allocated portion of general maintenance expense, as well as for depreciation." These allocations are, of course, a direct benefit to the operating cemetery company and its stockholders. I am satisfied that the alter ego relationship that existed between the operating cemetery company and the fund in *Rosehill* is good thesis for its conclusion, but that premise is wholly lacking here.

█ In our instant case, the income and corpus of the Greenwood Trust are irrevocably committed to providing perpetual care of the cemetery as the trustees or trustee shall from time to time elect and determine. The Greenwood

Trust should not lose its charitable and public use status merely because it elected to hire and paid compensation to the Greenwood Corporation for the work done and materials supplied rather than any other privately-owned and operated for profit gardener or landscape business. The fact that the Greenwood Corporation carried on a general improvement policy of permanent maintenance and care on its own as a profit-making venture does not, in my opinion, taint the Greenwood Trust income utilized for extra and additional maintenance and perpetual care with profit making. While it would be naive to say that the Greenwood Corporation is not incidentally benefitted by the existence of the Greenwood Trust for permanent care in its sale of burial lots, this is in no means an inurement to its benefit of the net earnings of the Greenwood Corporation. It is to be noted that the inurement-of-earnings test applies only to the third ground for exemption in Section 501(c) (13) supra.[6] Nevertheless, a discussion is helpful in pinpointing the two separate and distinct activities of the Greenwood Trust on the one hand and the Greenwood Corporation on the other.

" * * * The payment of salaries or commissions to individuals does not constitute inurement of benefits so long as the payments are reasonable and for value received." Home Oil Mill v. Willingham, 68 F.Supp. 525 (N.D.Ala., 145) Mabee Petroleum Corp. v. United States, 203 F.2d 872 (5th Cir. 1953).

" * * * The beneficiaries of the trust were the lot purchasers * * * the income from the permanent improvement fund had to be used as the statute (and Trust Agreement) commanded: 'For the permanent improvement, upkeep and beautification of its cemetery * * *' This would not bring gain or income to (Greenwood Corporation)." Memphis Memorial Park, Inc., v. Commissioner, 18 T.C.M. 637 (1959).

" * * * The profits of (Greenwood Corporation) are taxable because they inure to the benefit of its stockholders. The net earnings realized by (Greenwood Trust) are not taxable because they do not inure to the benefit of any private shareholder or individual." Forest Lawn Memorial Park Association, supra.

Of interest is Estate of Edward T. Bedford, 39 B.T.A. 1039 (1939) wherein the testator directed his trustee to pay $10,000 per year to his daughter to maintain public gardens on his property devised to her. In urging that this bequest should not be allowed the status of an income tax deduction for charitable contribution or purpose, the Commission urged that the daughter would benefit from the maintenance of the gardens since she lived on and owned the property and also that the market or resale value of the property was enhanced. The Court held that such an incidental benefit to the daughter did not vitiate the general public good nor deprive the estate of the charitable deduction.

■ Greenwood Corporation's agreement with Greenwood Trust is to timely remit all contributions and deposits made by the purchasers to the Endowment Fund and with that its legal obligations to the fund and its purchasers are fully satisfied, so it must necessarily follow that the purchasers of the lots and compartments by payment of the contributions or deposit to the fund become the true beneficiaries of this statutory trust agreement between Greenwood Trust and the purchasers. I can put it no better than to recall these words from Commissioner of Internal Revenue v. Cedar Park Cemetery, 183 F.2d 553 (7 Cir.) (1950):

"The Commissioner lays considerable stress on the argument that the income from the trust fund could be used to benefit the cemetery as a whole, rather than for the care of the various lots. We do not think that fact is significant. The owners of

---

6. This item becomes of importance in the later discussion of Revenue Ruling 58–190.

cemetery lots are necessarily concerned with more than the upkeep of their particular lot. They want assurance that after all the lots have been sold and at a time when the stockholders of the association will no longer receive any profits from the sale of lots, the roads, trees, shrubbery and grass and all parts of the cemetery will be maintained in a fitting and proper manner."

As I read *Evergreen Cemetery*, supra, it recognizes the same alter ego or adjunct relationship between the operating company and its fund as found in *Rosehill*, supra. Indeed, the Court's exhibits, contracts of sales between Evergreen Cemetery and purchasers of lots, dated December 27, 1939, and December 23, 1942, provide:

" * * * (Evergreen) agrees that said lot or lots shall receive perpetual care in accordance with the rules and regulations of said (Evergreen Cemetery), without additional cost to * * * (purchasers) * * *."

■ The Government urges this Court to adopt the strict constructionist, alter ego, adjunct or subsidiary character of Greenwood Trust to Greenwood Corporation as found in Revenue Ruling 64–127 (1964) 2 Cum.Bull. 153, and Produce Exchange Stock Clearing Association v. Helvering, 71 F.2d 142, 2d Cir. (1934). I decline. Greenwood Trust is not " * * * merely adjunct to the business of * * * " Greenwood Corporation, nor " * * * a subsidiary corporation to furnish such facilities * * * " as delineated in *Produce Exchange*, supra. Revenue Ruling 64–127 recites that, *unlike* Greenwood Corporation, the operating cemetery company here, the profit-making corporation in the example, as a part of its sales contract, " * * * agrees * * * " to place 10% of its sales price in a perpet-

ual care fund " * * * and to provide *at its own expense* (emphasis supplied) for the care, maintenance, and upkeep of the cemetery until such time as the income from the perpetual care fund becomes sufficient to provide such care * * * " The ruling concludes, untenably in my opinion, that the services of the fund to the profit-making company " * * * constitute substantial assistance in its business by affecting salability and selling price of lots * * * " and more importantly, in my opinion, which factor is totally absent here, relieves " * * * the company itself of a legal or contractual obligation * * * " thereby inuring to its benefit.

Greenwood Trust has support for its tax exemption status in the Treasurer's Rev.Rul. 58–190, C.B. 1958–1, 15, citing the whole of Sec. 501(c) (13) supra, and stating,

" * * * Although the instant organization (Greenwood Trust) does not own and develop land dedicated to the burial of the dead or perform certain other services usual to a nonprofit cemetery company, it performs a service essential to the maintenance of a cemetery and is considered to be organized and operated for burial purposes within the contemplation of Sec. 501(c) (13) of the Code."

and found that the fund as such performed such services as placed it within the meaning and Congressional contemplation of a "cemetery compan(y)" delineated in Sec. 501(c) (13) supra. The ruling then grants the exempt status to the fund as such "cemetery compan(y)" under the third grounds.[7] *Rosehill*, a strict constructionist, found on a factual basis otherwise. *Denver* found a premise for granting an exemption status to its fund as a "cemetery compan(y)" on the second grounds (see its Conclusion of Law No. 9), as I do here.[8]

---

7. " * * * Accordingly, it is held that the instant organization whose funds are irrevocably dedicated to the perpetual care of a non-profit cemetery, as a whole, *none of the net earnings* of which *inures to the benefit of any private shareholder or*

*individual,* may qualify for exemption * * * "

8. To be sure, Rev.Ruling 58–190, supra, was dealing with a non-profit operating cemetery company while in our case we

## ALTERNATE CONTENTIONS OF GREENWOOD TRUST FOR EXEMPT STATUS

Inasmuch as an appeal from the judgment contemplated in this opinion is most likely, it is advisable for this Court to deal with Trust Bank's alternative contentions for relief.

■ The Government asserts a variance between the Trust Bank's pretrial contentions and the Greenwood Trust's claim for a refund of the 1963 and 1964 taxes (Finding of Fact No. 13). It appears that the claims for refund, after asserting the factual material, alleged that Greenwood Trust was entitled to a refund of the taxes paid on the grounds it was an exempt cemetery company under Sec. 501(c) (13), supra, and did not allege it was an exempt organization under Sec. 501(c) (3), supra, or entitled to charitable deductions under Sec. 642 of the Internal Revenue Code of 1954.

It appears that the pretrial order factual contentions of Trust Bank are without incidental, let alone material, change from the claims for refund alleged factual matters under which Greenwood Trust claimed an exemption. All that can be said for the claimed variance is that the claims for refund did not cite all of the Internal Revenue Code sections under which the alleged facts would tend to establish an exempt status, but this is enough.

I am of the opinion this Court may not consider whether Greenwood Trust has tax exempt status under either one of Secs. 501(c) (3) and 642, supra.

Nemours Corp. v. United States, 188 F.2d 745 (3 Cir.), told us about twenty years ago:

"A long-standing statutory provision with regard to tax refunds is that suits may be brought only after a claim for refund has been filed with the Commissioner in accordance with the law and Treasury Regulations. The Regulations governing refunds under the statute in question here provide that 'The claim must set forth in detail * * * each ground upon which a refund is claimed, and facts sufficient to apprise the Commissioner of the exact basis thereof.' It is to be noted that both the grounds for recovery and the facts supporting them must be shown. The taxpayer stated as its ground for refund Section 26(f) and made its computation accordingly. That does not, under the decisions, give him a right to claim under some other section." (Citing Real Estate-Land Title & Trust Co. v. United States, 1940, 309 U.S. 13, 60 S.Ct. 371, 84 L.Ed. 542.)

"This is hard law, no doubt. Perhaps it is necessarily strict law in view of the scope of the operations of a fiscal system as large as that of the United States. Whether that is so we are not called upon to say. We apply the rule; we do not make it."

Campau Realty Co. v. United States, 69 F.Supp. 133 (Ct.Cl. 1947), interprets *Real Estate Title Co.*, supra, as refusing

" * * * to consider whether or not plaintiff was entitled to a refund under the section (23f) of the Revenue Act allowing a deduction for 'Losses sustained during the taxable year and not compensated for by insurance or otherwise,' since the taxpayer had based its claim for refund on the ground (Sec. 23k) that certain of its assets had become obsolete. It held that it was entitled to the deduction only if it was entitled to it under the section (23k) allowing a deduction for obsolescence, even though it appears that the facts alleged in support of this ground were sufficient to per-

---

are dealing with a profit-making operating cemetery company. Logically, this is no distinguishing factor. The important aspect of the Rev.Ruling is that it first dealt with the fund as a separate and distinct entity from and not as an adjunct to the non-profit operating cemetery company, and secondly, that "none of the net earnings of which inure(d) to the benefit of any private shareholder or individual,".

mit the deduction under the section (23f) providing for 'losses sustained.' "

Campau laments and confesses that they think this rule holds the taxpayer to quite strict an account in preparing its claims for refund, but they have no option but to follow it. So is the position of Trust Bank in this case.

This opinion, together with the admitted facts contended in the pretrial order, shall be and constitute this Court's Findings of Fact and Conclusions of Law herein, pursuant to Rule 52(a) of Federal Rules of Civil Procedure.

Counsel for Trust Bank shall submit appropriate judgment order with notice to the Government for settlement of the exact amount of interest recoverable.