**PROVIDENT NATIONAL BANK, Trustee of a Testamentary Trust of Laura Tyler, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 68–2120.**

United States District Court,
E. D. Pennsylvania.

April 7, 1971.

Lane Taylor, Jr., Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for plaintiff.

Donald R. Anderson, Edward J. Snyder, Dept. of Justice, Washington, D. C., for defendant.

## OPINION AND ORDER

FULLAM, District Judge.

This is a suit against the United States for a refund of federal income tax. Jurisdiction is based on 28 U.S.C. § 1346(a) (1). Both parties have moved for summary judgment. The following facts have been stipulated:

"1. Plaintiff is Provident National Bank, co-trustee of a testamentary trust created by Laura Tyler, deceased.

2. Defendant is the United States of America.

3. Laura Tyler executed a Will on October 23, 1936, in which she created a testamentary trust (hereinafter called 'the Laura Tyler Trust') by the following paragraph:

'FIFTH: I hereby give and bequeath the sum of Fifteen Thousand Dollars (15,000.00) unto my Trustees by this Will appointed, IN TRUST, NEVERTHELESS, perpetually to expend the net income therefrom in such manner as my Trustees may in their sole discretion deem proper, for the maintenance of the John J. Tyler Mausoleum in Cumberland Cemetery, near Lima, Delaware County, Pennsylvania, the purchase of flowers and blooming plants for decorating purposes in and about said Mausoleum and for the care of trees and shrubbery in and about said Mausoleum. Should there be any surplus of income, I direct my Trustees to expend the said surplus for the care of neglected graves, drives, walks and other parts of said Cumberland Cemetery, with special attention to the tombs of Minshall Painter and Jacob Painter; but I suggest that my Trustees bear in mind that the expenses of one year may be greater than those of another and build up a surplus accordingly.'

By Codicil executed on April 18, 1940, the testatrix added $5,000.00 to the corpus of the Laura Tyler Trust, for a total of $20,000.00. The Will appointed Plaintiff as co-executor and co-trustee.

4. The Cumberland Cemetery Company (hereinafter called 'Cemetery Company') is located at Middletown Road, Lima, Pennsylvania. It is a Pennsylvania Corporation, chartered on April 7, 1885 for the expressed purpose of 'maintaining a public Cemetery.'

5. Laura Tyler died on November 10, 1944. Plaintiff thereupon implemented the above-quoted Paragraph FIFTH of her Will by placing $20,000.00 from her estate into a trust account (No. 62574) titled 'Laura Tyler Trust #3.'

6. Since the death of Laura Tyler, Plaintiff has, as provided by the terms of the Laura Tyler Trust, caused distributions to be made from such Trust to the Cemetery Company each year. Aside from trustees' commissions, taxes, and other expenses of administration, no payment has ever been made from the Laura Tyler Trust other than to the Cemetery Company. The Cemetery Company has never placed such distributions received from the Laura Tyler Trust in a separate account or otherwise segregated them. Rather, it has deposited them in a regular checking account, which it calls its 'General Fund.' Since 1956, income from four other sources, in addition to the Laura Tyler Trust, has been regularly received and deposited in this General Fund. The first additional source of income is the John J. Tyler Trust. The second source is a pooled trust, the result of a court order in 1956 which consolidated 64 small private trusts. The third source is a statutory perpetual care fund. Since 1933, a Pennsylvania statute [1] has required the Cemetery Company, whenever it sells a lot or lots, to set aside a prescribed percentage (originally 10%, now 15%) of the proceeds from the sale into a perpetual care fund, which may be administered by a trustee. The Cemetery Company's practice has always been to set aside 50% of the proceeds, more than the statutory requirement. Income from investment of assets of the fund, when it is paid over to the Cemetery Company, is required by the statute to be used for care of the various lots. That portion of the proceeds from the sale of lots which is not set aside into the statutory perpetual care fund, the Cemetery Company deposits directly in its General Fund. This is the fourth additional source of income to the General Fund besides distributions from the Laura Tyler Trust.

7. Money in the above-described General Fund of the Cemetery Company is expended solely for flowers for the John J. Tyler Mausoleum and for the maintenance of the cemetery, and for no other purpose. This is the only money which is expended by the Cemetery Company for maintenance of the cemetery. Since 1957, expenses of maintenance have included a caretaker's salary, taxes and insurance on the caretaker's residence, repairs and purchases of equipment, and supplies. Prior to 1957, the Cemetery Company did not have a full-time employee responsible for maintenance. Instead, it hired various independent contractors on a per-job basis to do the work. Records of the Cemetery Company's General Fund show that since the death of Laura Tyler in 1944 until the present time, specific disbursements have been made from the Fund each year for placement of flowers about the John J. Tyler Mausoleum. These specific disbursements have averaged about $60.00 per year. The records of the Fund do not show any other disbursement specifically for maintenance of the Mausoleum since 1957. The records since then do show various general disbursements, such as for the caretaker's salary, and since maintenance of the cemetery grounds includes maintenance of the Mausoleum, a portion of each such general disbursement is attributable to maintenance of the Mausoleum. Of the income received from the Laura Tyler Trust each year, whatever the Cemetery does not spend on the Mausoleum, including the cost of flowers, it uses for its general expenses of maintenance, including upkeep of the cemetery grounds. No payment or portion thereof received by the Cemetery Company from the Laura Tyler Trust has ever been used other than for maintenance of the John J. Tyler Mausoleum or of the cemetery.

1. [15 Pa.Stat.Ann. § 1209]

8. During the two years ended September 30, 1962 and September 30, 1963, total amounts of $3,630.40 and $3,570.78, respectively, were received by the Cemetery Company from the sources described in Paragraph 6 and placed in its General Fund. The amounts of income from each of the various sources were as follows:

| Source | Year Ended 9/30/62 | Year Ended 9/30/63 |
|---|---|---|
| Laura Tyler Trust | $ 903.99 | $ 683.17 |
| John J. Tyler Trust | 1,030.67 | 1,082.63 |
| Pooled Trust | 502.67 | 526.19 |
| Statutory Perpetual Care Fund | 893.07 | 978.79 |
| Sales of Lots * | 300.00 | 300.00 |
| Totals | $3,630.40 | $3,570.78 |

9. During the two years ended September 30, 1962 and September 30, 1963, total amounts of approximately $3,495.00 and $3,436.00, respectively, were disbursed from the General Fund of the Cemetery Company. The only disbursements specifically for the John J. Tyler Mausoleum were amounts of approximately $60.00 for flowers in each year. Since both the Laura Tyler Trust and the John J. Tyler Trust provided for placement of flowers about the Mausoleum, one-half of each $60.00 disbursement, or $30.00 is attributable to the Laura Tyler Trust in each year. The remaining disbursements of approximately $3,465.00 during the year ended September 30, 1962 and $3,406.00 during the year ended September 30, 1963 were, for general maintenance of the cemetery. These general disbursements included such items as the caretaker's salary, social security and real estate taxes, insurance, purchase of equipment and supplies, repairs of equipment and of the caretaker's residence, and telephone.

10. Plaintiff timely filed with the District Director of Internal Revenue, Philadelphia, Pennsylvania, United States Fiduciary Income Tax Returns for the taxable years of the Laura Tyler Trust ending September 30, 1962 and September 30, 1963. The Returns reported the Trust's income from investments as taxable income and did not claim a deduction for the payments of $903.39 and $683.17 to the Cemetery Company during the two respective taxable years. The Returns showed taxes due of $221.72 and $1,132.49, respectively, which taxes were timely paid.

11. On June 25, 1965, Plaintiff filed Claims for Refund on behalf of the Laura Tyler Trust with the District Director of Internal Revenue, Philadelphia, Pennsylvania, claiming refunds of taxes in the amounts of $145.51 for the taxable year ended September 30, 1962, and $204.87 for the taxable year ended September 30, 1963, together with interest. The District Director gave Plaintiff notice of disallowance of the claims for refund by letter dated October 28, 1966."

Though not made explicit in the record, the fact is clear from the charter of the Cemetery Company and the arguments of counsel that the Company is operated for profit.[2]

## DISCUSSION

The refund claim is based on two alternative grounds: (1) that the trust is exempt under 26 U.S.C. § 501(c) (13), as a "cemetery company not operated for profit"; or (2) that the payments to the Cumberland Cemetery Company are deductible as distributions under 26 U.S.C. § 661(a) (2). Neither theory is tenable.

■ While the reported decisions are not altogether consistent the weight of

---

* In each of the taxable years here involved, two lots were sold. Each of the four sales was for $300.00. Pursuant to its practice, the Cemetery Company placed one-half of the proceeds from each sale into its statutory perpetual care fund and one-half directly into its General Fund.

2. The record does not reveal how the Company treats the payments received from the Laura Tyler Trust, for tax purposes.

for-profit cemeteries is taxable, whereas authority holds that the income of perpetual-care trusts in connection with such trusts in connection with non-profit cemeteries partake of the nature of their "parent" and are non-taxable. Mercantile Bank & Trust Co. v. United States, 312 F.Supp. 1164 (W.D.Mo.1970); Evergreen Cemetery Ass'n of Seattle v. United States, 302 F.Supp. 720 (W.D. Wash.1969); Rosehill Cemetery Co. v. United States, 285 F.Supp. 21 (N.D.Ill. 1968). *But see*: Denver United States Nat'l Bank v. United States, 302 F.Supp. 801 (D.Colo.1965); Washington Trust Bank v. United States, 301 F.Supp. 713 (E.D.Wash.1969). If any unifying theme can be derived from these cases, it is the degree of relationship between the trust and the cemetery company: too close, and the trust income will be deemed to inure to the benefit of the corporate profits; too remote, and the trust will be deemed insufficiently related to the cemetery purpose.

 The present case is clearly in the latter category. The dominant purpose of the trust, quite obviously, is the care and ornamentation of the family mausoleum. A secondary purpose is the care of two other designated graves. Only the surplus income may be devoted to the cemetery in general, and even such expenditures would seem indirectly to benefit the family crypt. The trust income is thus disqualified from exemption as inuring to the benefit of the settlor (testator). Rev.Rul. 58–190, 1958–1 Cum.Bull. 15; and *see* Estate of Wood v. Commissioner, 39 T.C. 1 (1962). Under no rational view can this trust be regarded as a cemetery company.

Plaintiff argues that, because perpetual-care trusts established and maintained by cemetery companies have, by extension, been treated as cemetery companies in some situations, it must follow that a private trust which makes payments to a cemetery company should also be regarded as a cemetery company. The non-sequitur is apparent. Moreover, this trust is not *required* to pay any of its income to a cemetery compa-

ny; that just happens to be the method selected for carrying out the obligation to keep up the family mausoleum.

The alternative assertion, that payments made by the trustee are deductible distributions under 26 U.S.C. § 661(a) (2) is more nearly persuasive. However, notwithstanding the broad language of the statute, plaintiff properly concedes that the payments must be made to a beneficiary of the trust in order to qualify for deduction as distributions. Treas.Reg. § 1.661(a)–2(a). And the conclusion is inescapable that the Cumberland Cemetery Company is not a beneficiary of this trust, but merely a firm with which the trustee contracts to furnish services.

For the foregoing reasons, the government's motion for summary judgment will be granted.