**MERCANTILE BANK AND TRUST COMPANY, as Trustee of the Troost Avenue Cemetery Company Abbey Fund Trust, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**COMMERCE TRUST COMPANY, as Trustee of the Troost Avenue Cemetery Company Chapel Gardens Mausoleum Trust, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Nos. 17206–1, 17207–1.**

United States District Court,
W. D. Missouri, W. D.

May 21, 1970.

Charles W. Hess, Linde, Thompson, Van Dyke, Fairchild & Langworthy, Kansas City, Mo., for plaintiffs.

Jerome Fink, Michael C. Durney, Tax Div., Dept. of Justice, Washington, D. C., Calvin K. Hamilton, Asst. U. S. Atty., Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

### I

The plaintiffs in this consolidated action are the trustees of two perpetual care funds dedicated to providing care for two respective mausoleums at the Troost Avenue Cemetery. Plaintiff Commerce Trust Company seeks to recover $11,432.69 and plaintiff Mercantile Bank and Trust Company seeks to recover $34,114.40, which the respective trusts had paid for capital gains taxes for the year 1967. Plaintiffs contend that the trusts are tax exempt pursuant to Title 26, United States Code, § 501(c) (13), and § 501(c) (3), or, in the alternative, are entitled to a deduction of all the reportable capital gains under Title 26, United States Code, § 642(c).

The basic facts are not in dispute. The parties disagree in some regard as to what inferences should be drawn therefrom. The stipulation of uncontroverted facts is incorporated by this reference as part of our findings of facts. We further adopt all of the defendant's suggested findings of fact which we find are supported by the evidence. Those findings are attached as Appendix A.[1]

---

1. The Government's suggested findings incorporated and accepted particular of plaintiffs' suggested findings, with certain exceptions therein noted. The phrases italicized in Appendix A reflect the additions made by the Government in plaintiffs' findings. Phrases included in brackets in Appendix A were included in the plaintiffs' suggested findings; we refuse to make those findings for reasons apparent from our discussion of the case. We have accepted the Government's suggested findings which are identified by the phrases italicized and have rejected plaintiffs' suggested findings by placing the particular language rejected in brackets.

We shall briefly state the controlling facts. The Troost Avenue Cemetery Company (hereinafter referred to as the "Cemetery Company"), pursuant to two separate trust agreements established trusts to provide for the perpetual care of mausoleum facilities for mausoleum compartments which have been sold. The corpus of the trust comes from a percentage of the sales price of the mausoleum space. In the case of the Abbey Trust, five (5) percent of the sales price is paid to the trustee. With respect to the Chapel Trust, ten (10) percent is paid to the trustee. The income derived from the trust investments is to be paid to the Cemetery Company to perform maintenance services.

## II

■ The first question presented is whether Title 26, United States Code, § 501(c) (13) exempts perpetual care trusts whose funds are paid to maintain cemetery property held by a cemetery company organized as a corporation for profit.

Section 501(c) (13) reads:

Cemetery companies owned and operated exclusively for the benefit of their members or which are not operated for profit; and any corporation chartered solely for burial purposes as a cemetery corporation and not permitted by its charter to engage in any business not necessarily incident to that purpose, no part of the net earnings of which inures to the benefit of any private shareholder or individual.

Although plaintiff trusts assert that they are entitled to an exemption under each of three independent categories of the statute, they concede that their strongest argument is that they are within the "cemetery company * * * not operated for profit" exemption within the meaning of Section 501(c) (13). It is obvious that each plaintiff must in fact be a cemetery company "not operated for profit" within the meaning of Section 501(c) (13) in order to qualify for that exemption. We conclude that both trusts involved fail to qualify for that exemption under Section 501(c) (13) for reasons we now state.

■ The only support for plaintiffs' contention that the trusts are "cemetery companies" within the meaning of § 501 (c) (13) is Revenue Ruling 58–190. That ruling held that a perpetual care trust fund connected to a *non-profit* cemetery company is exempt from taxation. Revenue rulings, of course, are not law and are not binding on courts. Therefore, even if plaintiffs' interpretation of Revenue Ruling 58–190 is correct (and we do not believe it is) it still is not binding on the Court. The Court must determine Congress' intent, not the intent of the Internal Revenue Service. Compare Helvering v. New York Trust Co., 292 U.S. 455, 54 S.Ct. 806, 78 L.Ed. 1361 (1934).

■ We agree with the interpretation of Revenue Rulings 58–190 and 64–217 in Rosehill Cemetery Company v. United States, 285 F.Supp. 21, 23 (N.D.Ill., 1968):

First, the Government has not, in the plaintiff's phrase, "recognized in its rulings that a perpetual care trust is a company." In Rev.Rul. 58–190, C.B. 1958–1, 15, the Treasury did state that an organization whose structure resembled that of these Trusts performed a service essential to the maintenance of a cemetery and was considered to be organized and operated for burial purposes within the contemplation of § 501(c) (13). However, that statement was made in the context of a situation involving a nonprofit cemetery association, and it cannot be removed from that context and given a broader reading than was there intended. The holding of that ruling is clearly qualified, viz.: "The instant organization *whose funds are irrevocably dedicated to the perpetual care of a nonprofit cemetery, as a whole, none of the net earnings of which inures to the benefit of any private shareholder or individual*, may qualify for exemption from the Federal income tax as an or-

ganization described in section 501(c) (13) of the Code." (Emphasis supplied). The nonprofit character of the cemetery is a substantial part of that holding and may not be ignored. Rev. Rul. 64–217, C.B. 1964–2, 153, specifically addressed itself to a virtually identical situation which had one significant difference: the income from the perpetual care fund in that instance was turned over to a profit-making cemetery company. The Treasury was entirely consistent with its 1958 ruling when it ruled in 1964 that "where the company actually operating the cemetery is itself a profit-making enterprise, the perpetual care fund operated in connection with it would also partake of this character and would not be entitled to exemption from Federal income tax." That ruling acknowledged the earlier (1958) ruling, finding implicit in it a recognition that perpetual care funds are so closely connected with the actual cemetery companies that they partake of the character of the cemetery companies for exemption purposes. Accordingly, it was held "that the perpetual care fund in the instant case, which is operated in connection with a profit-making cemetery company, is not entitled to exemption from Federal income taxation as an organization described in section 501(c) (13) of the Code."

The plaintiffs' proposed construction of the statute and the revenue ruling ignores the basic consideration that for-profit corporations cannot create subsidiaries or trusts or other organizations to carry out the important functions of the for-profit corporation and expect them to be not taxed. The corollary is that nonprofit corporations which have auxiliary corporations or trusts should not be subject to indirect taxation because of their auxiliary organizations.

Section 501(c) (2) is evidence of this Congressional intent to preserve the benefit of a valid exemption created by other sections of Section 501:

(2) Corporations organized for the exclusive purpose of holding title to property, collecting income therefrom, and turning over the entire amount thereof, less expenses, to an organization which itself is exempt under this section.

Revenue Ruling 58–190 merely reflects an application of the principle established and recognized in Section 501(c) (2).

The same considerations are evident in Revenue Ruling 66–225 which states that a non-profit organization incorporated to provide entertainment for its membership does not qualify for an exemption as a social club under Section 501(c) (7), where it is in fact controlled by a taxable corporation and operated as an integral part of such corporation's business. "Under the circumstances described above the motel owners organized the club to operate a cocktail lounge and cafe as an integral part of their motel and restaurant business. Therefore, the club is not organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes."

Of great relevance to the interpretation of Section 501(c) (13) is Section 642(c), which provides for a deduction from the taxable income of a trust that portion of the trust's gross income which "is to be used exclusively * * * for the establishment, acquisition, maintenance, or operation of a public cemetery not operated for profit."

It cannot be presumed that Congress was intentionally inconsistent in enacting Sections 501(c) (13) and 642(c). But such a conclusion would be required if plaintiffs' theory is tenable. It would be, to say the least, highly inconsistent for Congress to specifically preclude a trust from deducting income used to maintain a profit-making cemetery while at the same time completely exempting that trust from taxation.

Plaintiffs' argument that these trusts are not operated for profit depends on the confusion caused by the anomaly that the jargon for definition of trusts differs from that of other forms of busi-

ness organizations. Generally speaking, trusts do not have partners or shareholders who receive profits or sustain losses. Trusts are not classified as being "for profit" or "not for profit", but rather, are generally referred to as "charitable" or "private."

■ The determination that a trust is "charitable" depends upon the use of the trust's income. It is questionable whether the same test can also be used to determine if a trust is "for profit," within the meaning of a taxing statute. The trust agreements involved in this case make the cemetery company a major beneficiary of the trusts' income. The trust agreements provide that all of the maintenance work is to be done by the cemetery company or its successors. There is no provision limiting the cemetery company's fees to payment for its out-of-pocket expenses. Rather, the cemetery company can charge fees including profit for its maintenance services, and the agreement compels the trustees to deal with it. The plaintiffs have based their allegation that the cemetery company does not make any profit on the fact that up to this point in time the interest income from the trusts has not, in fact, covered the maintenance expenses. This will not, however, necessarily be true in the future. Obviously, if the trust's capital gains are taxed, the corpus will not expand as much as it would otherwise, and therefore would not produce as much income (which would eventually be paid to the cemetery company for maintenance).

■ Perpetual care features were "significant in the sales and essential in many cases to the sales of the compartments." (Abbey Stip. ¶ 18, Chap. Stip. ¶ 16). The advertising exhibits indicate that the cemetery company believed that the perpetual care feature was an important attraction and was a strong selling point. The Missouri statutes provide a cemetery company with a perpetual care fund with decided sales advantages, e. g., freedom from the requirement of setting up a sign stating "This is a non-endowed cemetery" and imprinting the same information on all letters, contracts, and advertisements. There is obviously great benefit in having a perpetual care fund for a profit making cemetery. The perpetual care fund provides one of the most important services for a family of a deceased. See Gracelawn Memorial Park, Inc. v. United States, 260 F.2d 328, 331 (3rd Cir., 1958). The relationship between the corporation and the trust is so intertwined that it must be said that the trust takes on the character of the corporation to which it is related. If the corporation is for profit, the trust must also be held to be of the same character.

We have studied Denver United States Nat'l Bank v. United States, 302 F.Supp. 801 (D.Colo., 6/4/65); Washington Trust Bank v. United States, 301 F.Supp. 713, 718 (E.D.Wash., 1969), appeal pending (9th Cir., No. 25219); Evergreen Cemetery Association of Seattle v. United States, 302 F.Supp. 720 (W.D.Wash., 1969); and Rosehill Cemetery Co. v. United States, *supra*. For the reasons we have stated, we find the *Evergreen Cemetery* and *Rosehill Cemetery* cases persuasive.

In addition, we conclude that the trusts here involved are not "cemetery companies owned and operated exclusively for the benefit of their members" nor are they "cemetery companies * * * no part of the earnings of which inures to the benefit of any private shareholder or individual" within the meaning of Section 501(c) (13). See and compare West Laurel Hill Cemetery Co. v. Rothensies, 139 F.2d 50, (3rd Cir., 1943), cert. den. 321 U.S. 780, 64 S.Ct. 637, 88 L.Ed. 1073 and Forest Lawn Memorial Park Ass'n., Inc. v. C. I. R., 45 B.T.A. 1091 (1941).

### III

Defendant contends that plaintiffs' claims under Sections 501(c) (3) and 642 (c) should not be considered by the Court because no claim under these sections was alleged on the administrative claim form. It is unnecessary to decide what may be a problematic issue (see 10 Mertons, Law of Federal Income Taxation,

§ 58A–05, p. 23) because we deny plaintiffs' claims based on these sections on the merits for the reasons we now state.

## IV

Section 501(c) (3) provides exemption for organizations "operated exclusively for * * * charitable * * purposes." Plaintiffs have cited no authority to support their contention that the trusts are charitable corporations within the meaning of § 501(c) (3).

An elaborate definition of "charitable" is set forth in Bok v. McCaughn, 42 F.2d 616 (3rd Cir., 1930), " 'whatever is given for the love of God, or the love of your neighbor, in the catholic and universal sense, given from these motives and to these ends, free from the stain or taint of every consideration that is personal, private, or selfish.' " See also DeJong v. C. I. R., 309 F.2d 373 (9th Cir., 1962); Crosby Valve and Gage Co. v. C. I. R., 380 F.2d 146 (1st Cir., 1967); Duffy v. Birmingham, 190 F.2d 738 (8th Cir., 1951); Underwriters' Laboratories, Inc. v. C. I. R., 135 F.2d 371 (7th Cir., 1943); cert. den., 320 U.S. 756, 64 S.Ct. 63, 88 L.Ed. 450 (1943); Transamerica Corp. v. United States, 254 F.Supp. 504, 514 (N.D.Calif., 1966) as modified by United States v. Transamerica Corp., 392 F.2d 522 (9th Cir., 1968); Passaic United Hebrew Burial Ass'n. v. United States, 216 F.Supp. 500 (D.N.J., 1963) ("Plaintiff thus performs a community function by making available a necessary service to those who would otherwise not be able to provide for such service without financial hardship"); Bank of Carthage v. United States, 304 F.Supp. 77 (decided April 9, 1969, W.D.Mo.). ("Where the nature of the particular trust purpose * * * is the relief of poverty it appears implicit that the direct beneficiaries of the trust must be poor persons, or persons in poverty conditions rather than all persons indiscriminately"); and 10 Mertens, § 31.28.

There is no evidence of any charitable purpose on behalf of any persons or corporations in this trust arrangement. The trust merely provides a service through which certain individuals buy maintenance services to protect their own property.

## V

For the same reasons stated in previous sections of the opinion, we hold that the trusts are not entitled to a deduction pursuant to Section 642(c) on the basis of income to be used exclusively for "charitable" purposes. Furthermore, Section 642(c) specifically permits a deduction to be used for the "maintenance or operation of a public cemetery *not operated for profit.*" The axiom of interpretation *expressio unius est exclusio alterius* would suggest that when Congress limited the deduction to non-profit cemeteries, it did not intend that sums paid to profit-making cemeteries were to be deductible under this section.

This memorandum incorporates the Court's findings of fact and conclusions of law required to be set forth by Rule 52, Federal Rules of Civil Procedure.

For the reasons stated, it is

Ordered that our verdict is for the defendant and judgment be entered accordingly.

### APPENDIX A

### FINDINGS OF FACT

The Court incorporates as a part of its findings of fact the uncontroverted facts set forth in the Stipulation between the parties filed herein and finds in accordance therewith as follows:

*No. 17206–1:*

(1) The Troost Avenue Cemetery Company Abbey Fund Trust (hereinafter referred to as "Abbey Trust") is a perpetual care trust created by Trust Agreement dated December 30, 1932, between Troost Avenue Cemetery Company (hereinafter "Company") and Pioneer Trust Company of Kansas City.

(2) The plaintiff Mercantile Bank & Trust Company, (hereinafter "Abbey Trustee") is a Missouri banking corporation authorized by law to administer trusts, with its principal place of busi-

ness located at 1119 Walnut Street, Kansas City, Missouri. As successor to the Pioneer Trust Company of Kansas City, it is and was during the taxable years here involved, the duly acting trustee of the Abbey Trust.

(3) The Troost Avenue Cemetery Company is a Missouri corporation which for many years has been, and is presently engaged in the business of providing mausoleum facilities through the sale and operation of the Forest Hill Abbey (hereinafter "Abbey Mausoleum") located on the cemetery grounds of Forest Hill and Calvary Cemeteries, 6901 Troost Avenue, in Kansas City, Missouri. The Company is a profit-making organization.

(4) As a part of its operations the Company has sold substantially all of the Mausoleum compartments in the Abbey although a few remain unsold. To accomplish the perpetual care of the Abbey the Company caused the Trust to be formed and agrees with the purchasers of space in the Abbey to pay into the Trust [a certain amount] *5 percent* of the sales price, which amount paid to the Trustee is determined in accordance with the contracts between the Company and the purchasers, the Trust Agreement and Missouri law.

(5) The Trust is irrevocable, and the income and corpus thereof are irrevocably and exclusively committed to the perpetual care and maintenance of the Abbey.

(6) The Trust is operated independently of and separate from the Company by the Trustee and the corpus of the Trust [can never inure to the benefit of the Company or its stockholders.] *can never be distributed to the Company or its stockholders.*

(7) The Trust Agreement provides for payment semi-annually of the net income to the Company for reimbursement of advances in services rendered in the six-month period.

(7) (A) Although the Trust has had distributable net income in every year since its inception in 1932, only in 1967 did the Trust pay to the Company any of its net income.

(7) (B) During [the year in question] *1967*, and for each year since January 1, 1954, the amounts expended by the Company for care and maintenance of the Abbey exceeded the yearly income paid to the Company by the Trust [and the Company made no charges against the Trust income so paid on account of its overhead or other management or capital outlay].

(7) (C) The Company has always deducted the full amount expended for maintenance and care of the Abbey as a business expense on its Federal income tax returns.

(8) The income received from the Trust by the Company for 1967, although commingled with other Company funds in the Company's general bank account was used in its entirety for the care and maintenance of the Abbey.

(9) The Trust cannot by its terms distribute capital gain income to the Company, and the Trustee has retained and retains all capital gains and allocates or adds the same to the corpus of the Trust.

(10) In the event that the right to control and manage the mausoleum passes from the Company into other hands, the legal successor of the Company would be required to maintain the Trust and make deposits to and with the Trustee and further perform all the obligations imposed upon the Company by the terms of the Trust Agreement.

(11) In the *contracts of* sale of spaces in the Abbey, the Company does not promise or agree to provide perpetual care for the [same] *Abbey.*

(11) (A) The Company does in fact have an obligation to provide perpetual care for the Abbey, which obligation is relieved by the income of the Trust in full or in part depending on the amount of the income.

(11) (B) The amounts paid to the Company by the Trust relieve the Company of the obligation to expend equivalent amounts of the Company's own money, and accordingly increase the net in-

come of the Company by equivalent amounts.

(11) (C) The presence of the perpetual care fund trust was essential to the successful sale of spaces in the Abbey by the Company.

(12) The election made by the Company in 1961 to operate as an "Endowed Care Cemetery" under Missouri law acknowledges that the maintenance and operation of the Trust is regulated by the Missouri "Cemetery Endowed Care Fund Law," R.S.Mo. 214.270–214.410.

(13) The provisions of the contracts between the Company and the purchasers, the Trust Agreement and the Missouri law have always been consistently followed by the Company. During the years involved, the books of the Company show the sale of compartments in the Abbey and the segregation of the proper percentage of the sales price paid for endowment care; collection of the percentage by the Company and its payment to the Trustee.

(14) See (7) (B).

(15) On August 15, 1967, the Trust filed with the District Director of Internal Revenue of Kansas City, Missouri, a Form 1026 application for exempt status, claiming tax exemption as an organization described in Section 501(c) (13) of the Internal Revenue Code of 1954. This application was denied, and the Trust was formally notified of the denial of this application for an exemption by letter dated October 30, 1967.

(16) On or about April 8, 1968, the Trustee filed a United States fiduciary tax return (Form 1041) for the Trust for the year 1967 which is in suit with the District Director of Internal Revenue of St. Louis, Missouri. On the return the Trustee reported ordinary income in the form of dividends and interest which amounts were included in gross income, and then deducted (after deduction of the Trustee fee, accrued interest and shipping charges) the remaining amount as "distributions to beneficiaries." On the return the Trustee reported net capital gain, including both short-term and long-term capital gain which together exceeded short and long term capital loss which it included in gross income; from these amounts, Trustee deducted the 50 percent long-term capital gain deduction and the $100 Trust exemption, leaving a balance of taxable income on which the Trustee reported and paid income tax as follows:

| Taxable income | $74,614.59 |
|---|---|
| Tax | $34,114.40 |

(17) [By an amended return filed with the District Director of Internal Revenue of St. Louis, Missouri, on August 19, 1969, the Company included in its gross income for the taxable year 1967 the amount deducted by the Trustee for that year as "distributions to beneficiaries."]

(18) The Trustee filed on April 15, 1968, a timely claim for refund (Form 843) of the amount assessed and paid with respect to capital gains as shown by the return wherein the Trustee asserted as a ground for refund that during the year in question the Trust was an organization exempt from federal income taxation under the provisions of Section 501 (c) (13) of the Internal Revenue Code of 1954. *The Trustee did not assert as grounds for refund that the Trust was exempt from Federal income taxation under the provisions of Section 501(c) (3) or that the Trust was entitled to deduct the capital gains realized in 1967 under the provisions of Section 642(c).*

(19) On December 24, 1968 the Trustee filed the instant suit for refund by serving a copy of the complaint and summons on the District Director of Internal Revenue, St. Louis, Missouri, among other parties, alleging as additional and alternative grounds for recovery that the Trust qualified for federal tax exemption as a charitable trust described in Section 501(c) (3) of the Internal Revenue Code of 1954, or that it was entitled to deduct the capital gains realized in 1967 under the provisions of Section 642 (c) of the Internal Revenue Code of 1954 as amounts permanently set aside for charitable use.

(20) The claim for refund was disallowed by notice of disallowance from the District Director of Internal Revenue on January 15, 1969. In addition, the District Director on January 16, 1969 forwarded to the Trustee a Preliminary Statement covering the examination and disallowance of the Trust's claim for refund stating therein that suit had been filed.

*No. 17207–1:*

(1) The Troost Avenue Cemetery Company Chapel Gardens Mausoleum Trust (hereinafter referred to as "Chapel Trust") is a perpetual care trust created by Trust Agreement dated February 23, 1965, between Troost Avenue Cemetery Company (hereinafter "Company") and Commerce Trust Company of Kansas City.

(2) The plaintiff Commerce Trust Company (hereinafter "Chapel Trustee") is a Missouri Banking Corporation authorized by law to administer trusts, with its principal place of business located at 10th and Walnut Streets, Kansas City, Missouri, and is and was during the taxable year here involved, the acting Trustee of the Chapel Trust.

(3) The Troost Avenue Cemetery Company is a Missouri Corporation which for many years has been, and is presently, engaged in the business of providing mausoleum facilities through the sale and operation of the Chapel Gardens Mausoleum (hereinafter "Chapel Mausoleum") located on the cemetery ground of Forest Hills and Calvary Cemeteries, 6901 Troost Avenue, Kansas City, Missouri. The Company is a profit-making organization.

(4) As a part of its operations the Company has sold and is selling mausoleum compartments in the Chapel. To accomplish the perpetual care of the Chapel, the Company caused the Trust to be formed and agrees with the purchasers of space in the Chapel to pay into the trust [a certain amount] *ten percent* of the sales price; which amount paid to the Trustee is determined in accordance with the contracts between the Company and the purchasers, the Trust Agreement and Missouri law.

(5) The Trust is irrevocable, and the income and corpus thereof are irrevocably and exclusively admitted to the perpetual care and maintenance of the Chapel.

(6) (See Page 1170, ¶ 6 of No. 17206–1 Finding of Fact).

(7) The Trust Agreement provides for payment of the net income to the Company for use in caring for the Chapel and maintenance in good order, appearance and repair.

(7) (A) During [the year in question] *1967*, and for each year since 1965, the amounts expended by the Company for care and maintenance of the Chapel exceeded the yearly income paid to the Company by the Trust [and the Company made no charges against the Trust income so paid on account of its overhead or other management or capital outlay.]

(7) (B) The Company has always deducted the full amount expended for maintenance and care of the Chapel as a business expense on its federal income tax returns.

(8) The income received from the Trust by the Company for 1967, although commingled with other Company funds in the Company's general bank account was used in its entirety for the care and maintenance of the Chapel.

(9) (Same as Page 1170, ¶ 9 of No. 17206–1 Finding of Fact).

(10) In the *contracts of* sale of spaces in the Chapel, the Company does not promise or agree to provide perpetual care for the [same] *Chapel*.

(10) (A) The Company does in fact have an obligation to provide perpetual care for the Chapel, which obligation is relieved by the income of the Trust in full or in part depending upon the amount of the income.

(10) (B) (Same as Page 1170, ¶ (11) (B) of No. 17206–1 Finding of Fact.)

(10) (C) The presence of the perpetual care fund trust was essential to the

successful sale of spaces in the Chapel by the Company.

(11) (Same as Page 1171, ¶ 12 of No. 17206–1 Finding of Fact.)

(12) The provisions of the contracts between the Company and the purchasers, the Trust Agreement and the Missouri law have always been consistently followed by the Company. During the years involved, the books of the Company show the sale of compartments in the Chapel and the segregation of the proper percentage of the sales price paid for endowment care; collection of the percentage by the Company, and its payment to the Trustees.

(13) See No. 17207–1(7) (A).

(14) On April 8, 1969, the Trust filed with the District Director of Internal Revenue of St. Louis, Missouri, a Form 1026 application for exempt status, claiming tax exemption as an organization described in Section 501(c) (13) of the Internal Revenue Code of 1954. This application was denied, and the Trust was formally notified of the denial of this application for an exemption by letter dated June 12, 1968.

(15) On or about April 10, 1968, the Trustee filed a United States Fiduciary tax return (Form 1041) for the Trust for the year 1967 which is in suit with the District Director of Internal Revenue of St. Louis, Missouri. On the return the Trustee reported ordinary income in the form of dividends and interest which amounts were included in gross income, and then deducted $130.13 as a Trustee fee and deducted $554.23 as a deduction for "distributions to beneficiaries." On the return the Trustee reported net short term capital gains, which exceeded short and long term capital loss which amount it included in gross income; from these amounts, Trustee deducted the $300 Trust exemption, leaving a balance of taxable income on which the Trustee reported and paid income tax as follows:

| Taxable income | $30,533.37 |
| Tax | 11,432.69 |

(16) [By its return filed with the District Director of Internal Revenue, St. Louis, Missouri, in 1968, the Company included in its gross income for the taxable year 1967 the amount deducted by the Trustee for that year as "distributions to beneficiaries."]

(17) (Same as Pages 1171, ¶ 18 of No. 17206–1 Finding of Fact.)

(18) (Same as Page 1171, ¶ 19 of No. 17206–1 Finding of Fact.)

(19) The claim for refund was disallowed by notice of disallowance from the District Director of Internal Revenue on January 28, 1969.