MERCANTILE BANK & TRUST COMPANY, as Trustee of the Troost Avenue Cemetery Company and Abbey Fund Trust, Appellant,

v.

UNITED STATES of America, Appellee.

COMMERCE TRUST COMPANY, as Trustee of the Troost Avenue Cemetery Chapel Gardens Mausoleum Trust, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 20444, 20445.

United States Court of Appeals, Eighth Circuit.

April 12, 1971.

Rehearing Denied May 7, 1971.

Charles White Hess, Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, Mo., for appellants.

Stephen H. Hutzelman, Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Crombie J. D. Garrett, Attys., Tax Division, Dept. of Justice, Washington, D. C., Bert C. Hurn, U. S. Atty., Paul Anthony White, Asst. U. S. Atty., of counsel.

Before VAN OOSTERHOUT, GIBSON and LAY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

In these two consolidated cases, each of the plaintiffs as trustee of a separate

perpetual care fund dedicated to providing care for two respective mausoleums at the Troost Avenue Cemetery seeks recovery of 1967 income tax paid by it upon realized capital gain. No controversy with respect to tax on ordinary income is involved. The trial court rejected plaintiff taxpayers' contention that the capital gain on the trusts was exempt from income taxation and dismissed the complaints. This timely appeal followed.

The necessary foundation for this action has been laid. Jurisdiction of the District Court and this court is established.

The issue presented by this appeal is whether the District Court correctly held that the two plaintiff trusts did not qualify for tax exemption status as cemetery companies pursuant to § 501(c)(13), I.R.C.1954. We hold the trial court properly denied taxpayers' exempt status and affirm.

Judge Oliver's well-reasoned opinion, reported at 312 F.Supp. 1164, fully and fairly sets out the pertinent facts which are stipulated and not disputed. He also sets out the basis of his decision. We will briefly summarize the basic facts.

The Troost Avenue Cemetery Company (hereinafter cemetery company) is a Missouri corporation organized March 8, 1890. It is operated for profit. It has engaged in the business of owning, providing and selling mausoleum facilities at the Abbey and Chapel mausoleums on the grounds of its cemetery at Kansas City, Missouri. In order to provide perpetual care for each mausoleum, the cemetery company caused the Abbey Trust Fund and the Chapel Trust Fund to be formed. It agreed with the purchaser of mausoleum space to pay into the trusts a designated percentage (Abbey 5%, Chapel 10%) of the sale price, the corpus to be irrevocably and exclusively committed to the perpetual care and maintenance of the mausoleum related to each trust. The trust income is to be used exclusively for mausoleum care and maintenance. The trusts are operated separately with respect to each other and separately from the cemetery company by the respective trustees.

Mercantile Bank & Trust Company is trustee of the Abbey fund and Commerce Trust Company is trustee of the Chapel fund. The plaintiff trustees will be referred to herein as taxpayers. The parties are agreed that the same legal principles apply to each trust.

The income of the trusts in 1967 and in recent years, in accordance with the trust agreement, has been paid by the trustees to the cemetery company for the maintenance of the mausoleums. In each year the income turned over has been inadequate to take care of maintenance expense and the deficiency has been met by the cemetery company.

The cemetery company operated the cemetery and the mausoleums under the Missouri "Endowed Care Fund Law", RSMo 214.270–214.410. The provisions of the sale contracts, trust agreements and Missouri law have been consistently followed by the cemetery company.

The trustees under the trust agreement cannot distribute capital gain income. They have properly retained the proceeds of the capital gain realized in 1967 and such income has been properly allocated to the corpus of the trust.

Taxpayers contend that the capital gain of the trusts here in controversy is exempt from taxation under § 501(c)(13), I.R.C.1954, which extends exemption from taxation to:

> "Cemetery companies owned and operated exclusively for the benefit of their members or which are not operated for profit; and any corporation chartered solely for burial purposes as a cemetery corporation and not permitted by its charter to engage in any business not necessarily incident to that purpose, no part of the net earnings if which inures to the benefit of any private shareholder or individual."

This statute affords exemption to (1) cemetery companies owned and operated exclusively for the benefit of its members; (2) cemetery companies which are

not operated for profit; and (3) corporations chartered solely for burial purposes, no part of the net earnings of which inure to the benefit of any private stockholder or individual. Taxpayers contend that they fall within the second category—cemetery company which is not operated for profit.

■ The basic problem presented is one of statutory interpretation. It is appropriate to review the underlying rules. Special benefits to taxpayers, such as tax exemption status, do not turn upon general equitable considerations but are matters of legislative grace. The taxpayer has the burden to show that it comes within the statutory provision allowing the deduction or exemption. United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 235–236, 75 S.Ct. 733, 99 L.Ed. 1024; Deputy v. du Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416; New Colonial Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348.

Exemptions from taxation are to be construed narrowly. Bingler v. Johnson, 394 U.S. 741, 752, 89 S.Ct. 1439, 22 L.Ed.2d 695; Commissioner of Internal Revenue v. Jacobson, 336 U.S. 28, 49, 69 S.Ct. 358, 93 L.Ed. 477.

■ Where, as here, the statute contains no definition of the words "in controversy" (cemetery company), the general rule is that popular or received import of words furnishes the general rule for the interpretation of public laws. Deputy v. du Pont, supra, 308 U.S. p. 493, 60 S.Ct. 363. Words of statutes should be interpreted where possible in their ordinary, everyday senses. Malat v. Riddell, 383 U.S. 569, 571, 86 S.Ct. 1030, 16 L.Ed.2d 102.

■ What is the general ordinary meaning of the words "cemetery company"? Generally a cemetery company owns real estate which for a consideration it makes available for the burial of the dead. It develops the real estate by landscaping and lays out and establishes roads and paths to make the graves accessible. Burial lots are sold. In some instances, mausoleums are built and space therein is sold for burial. Graves are opened for burial and closed, and other miscellaneous services are provided. The grounds and buildings are maintained so as to present a proper appearance. Taxpayers have offered no substantial evidence to meet the burden resting upon them to show that they are a cemetery company. The only services that the taxpayers perform which approach a cemetery operation is to provide trust income to help pay for the cemetery maintenance.

Assuming that providing the funds constitutes maintenance, taxpayers fall far short of being a cemetery company. They perform only a very small portion of the usual functions of a cemetery company. Taxpayers own no cemetery real estate, they sell no burial space and render no services related to burials. Taxpayers have failed to establish that they are a cemetery company within the meaning of the term as used in the applicable statute. Thus they do not qualify for the exemption claimed.

The reasoning of the trial court in its reported opinion and that of Rosehill Cemetery Co. v. United States, N.D.Ill., 285 F.Supp. 21, relied upon by the trial court, requires an affirmance. An affirmance is likewise supported by Evergreen Cemetery Ass'n of Seattle v. United States, W.D.Wash., 302 F.Supp. 720, and First National Bank of Waco v. United Staes, W.D.Tex., opinion filed December 8, 1970.

We find the reasoning of Denver United States National Bank v. United States, D.Colo., 302 F.Supp. 801, and Washington Trust Bank v. United States, E.D.Wash., 301 F.Supp. 713, which reach a contrary result to be unpersuasive.

What has heretofore been said is dispositive of this litigation. However, since taxpayers place principal reliance on revenue rulings to support their contention that they are a cemetery company, a discussion of such contention appears desirable.

The original Internal Revenue Code of 1913 contained language exempting a cemetery company owned and operated exclusively for the benefit of its members. 38 Stat. 172. In 1921 the exemption was enlarged to make the statute read as it does today. 42 Stat. 253. Previous to 1958 the Commissioner held that a maintenance trust did not qualify as a cemetery company. I.T.1881, C.B. II–2,200 (1923). Taxpayers place principal reliance on Rev.Rul. 58–190, C.B. 1958–1, 15, to establish their position that their activities are so closely related to those of the cemetery for which they provide maintenance money to entitle them to be considered a cemetery company for the purpose of exemption status. The identical argument based on revenue rulings was made and rejected in *Rosehill*.

The trial court quotes and adopts the reasoning in *Rosehill* in rejecting taxpayers' contention, including in the quotation the following:

> "In Rev.Rul. 58–190, C.B.1958–1, 15, the Treasury did state that an organization whose structures resembled that of these Trusts performed a service essential to the maintenance of a cemetery and was considered to be organized and operated for burial purposes within the contemplation of § 501(c) (13). However, that statement was made in the context of a situation involving a nonprofit cemetery association, and it cannot be removed from that context and given a broader reading than was there intended. The holding of that ruling is clearly qualified, viz: 'The instant organization *whose funds are irrevocably dedicated to the perpetual care of a nonprofit cemetery, as a whole, none of the net earnings of which inures to the benefit of any private shareholder or individual,* may qualify for exemption from the Federal income tax as an organization described in section 501(c) (13) of the Code.' (Emphasis supplied). The nonprofit character of the cemetery is

a substantial part of that holding and may not be ignored. Rev.Rul. 64–217, C.B.1964–2, 153, specifically addressed itself to a virtually identical situation which had one significant difference: the income from the perpetual care fund in that instance was turned over to a profit-making cemetery company. The Treasury was entirely consistent with its 1958 ruling when it ruled in 1964 that 'where the company actually operating the cemetery is itself a profit-making enterprise, the perpetual care fund operated in connection with it would also partake of this character and would not be entitled to exemption from Federal income tax.' That ruling acknowledged the earlier (1958) ruling, finding implicit in it a recognition that perpetual care funds are so closely connected with the actual cemetery companies that they partake of the character of the cemetery companies for exemption purposes. Accordingly, it was held 'that the perpetual care fund in the instant case, which is operated in connection with a profit-making cemetery company, is not entitled to exemption from Federal income taxation as an organization described in section 501(c) (13) of the Code." 312 F.Supp. 1164, 1166–1167.

The trial court aptly observes:

> "The plaintiffs' proposed construction of the statute and the revenue ruling ignores the basic consideration that for-profit corporations cannot create subsidiaries or trusts or other organizations to carry out the important functions of the for-profit corporation and expect them to be not taxed. The corollary is that non-profit corporations which have auxiliary corporations or trusts should not be subject to indirect taxation because of their auxiliary organizations." 312 F.Supp. 1164, 1167.

For reasons hereinafter stated, we do not believe that the plain language of § 501(c) (13) authorizes the adjunct theo-

ry set out in the quoted revenue rulings. However, to the extent the adjunct theory has any validity, we agree with the trial court that the rulings do not extend tax exemptions to the taxpayers in our present situation where the cemetery company is operated for profit.

Revenue rulings are not binding upon the courts and are of little aid in interpreting statutes. Biddle v. Commissioner, 302 U.S. 573, 582, 58 S.Ct. 379, 82 L.Ed. 431; United States v. Hall, 8 Cir., 398 F.2d 383, 387; Sims v. United States, 4 Cir., 252 F.2d 434, 438. Any conflict between a revenue ruling and a statute must of course be resolved in favor of the statute.

We do not believe that § 501(c)(13) can reasonably be interpreted to classify trusts such as these taxpayers as cemetery companies. As heretofore pointed out, the trusts do not carry out the major functions of a cemetery company. It appears that the purpose of the statute is to confer tax exemption only upon bona fide cemetery companies which are not operating for a pecuniary profit. Taxpayers' proposed adjunct theory it seems to us extends the exemption to a situation not contemplated by Congress. If the cemetery company itself had retained the maintenance deposit in a reserved fund of its own, the statute clearly would not exempt any capital gain or any other income from taxation. The trust here no doubt was established in good faith to provide purchasers with additional assurance that maintenance funds would not be dissipated and that funds would be available for maintenance if the cemetery company ceased to operate. However, the result is that of exemptions being claimed in a situation not contemplated by the statute.

Much is said in the briefs about the inurement of trust earnings to the benefit of the cemetery company. We consider inurement of benefits issue to be irrelevant on the controlling statutory interpretation issue.

The judgment is affirmed.