John L. SCHWIEGER and Dwayne Vande Stouwe, Appellants,

v.

IOWA BEEF PROCESSORS, INC., Appellee.

No. 85–1868.

United States Court of Appeals, Eighth Circuit.

April 13, 1987.

Fredric H. Kauffman and Terry R. Wittler, Cline, Williams, Wright, Johnson & Oldfather, Lincoln, Neb., for appellee.

Ned A. Stockdale, M. Gene Blackburn, Herbert R. Bennett, Fort Dodge, Ia., for appellants.

Before LAY, Chief Judge, ROSS and WOLLMAN, Circuit Judges.

LAY, Chief Judge.

Iowa Beef Processors, Inc. (IBP) has petitioned for rehearing en banc or for panel rehearing. As grounds for rehearing, IBP asserts that: (1) this decision permits the plaintiffs to waive a condition precedent to IBP's duty to perform, which will have adverse effects on other qualified stock option plans; (2) this decision directly conflicts with our decision in *Langer v. Iowa Beef Packers, Inc.*, 420 F.2d 365 (8th Cir. 1970); and (3) it erroneously assumes that the market price of the stock was below the option price.

**Background**

Schwieger and Vande Stouwe attempted to exercise their employee stock options upon their termination from IBP. The requests were made within the times permitted in the option plans; and both had vested rights under the plans. However, both Schwieger and Vande Stouwe had prior options considered to be outstanding at the time. The options contained a sequence of exercise clause, which was required by the IRS in order for the options to be qualified stock options. As qualified stock options, their exercise would have favorable tax consequences. However, the sequence of exercise provision purportedly prevented exercise of these subsequent stock options while the prior options were outstanding. In the instant case, this court held that exercise of a blocked stock option, despite the presence of a sequence of exercise provision, only affected the tax consequences.

**The Sequence of Exercise Provisions**

■ The primary thrust of IBP's argument in its petition for rehearing concerns the effect of permitting Schwieger and Vande Stouwe to exercise their options without regard to the sequence of exercise provision contained therein. IBP contends that this court's allowing Schwieger and Vande Stouwe to exercise their blocked options will transmute all similar options from qualified stock options to nonstatutory stock options. They further assert that this result will occur solely because of the existence of the possibility to exercise blocked options and is not dependent upon their actually being exercised. We note that this argument was not raised or briefed in its original appeal; notwithstanding, because of IBP's argument asserting our original opinion deficient, we pass on the claim, but find no merit to it.

IBP reaches these conclusions based upon its interpretation of a ruling of the National Office of the IRS. Rev.Rul. 73–26, 1973–1 C.B. 204. That ruling considered "tandem" options. A tandem option is "a purported separate grant, either at the same time or at different times, of a qualified stock option and a nonstatutory stock option under terms that provide that the exercise of one option reduces the number of shares for which the other option can be exercised." *Id.* Such an arrangement was determined to convert the purportedly qualified stock option into a nonstatutory option, thus making the tax advantages unavailable to all such option holders. *Id.* at 205.

Although the revenue ruling considered the effect of two separate options operating in tandem, the analogy to the possible effect of the holding of this court in the instant case is based on the fact that the corporation has set aside only one allocation of stock from which to satisfy the exercised options. However, there are some significant dissimilarities. The revenue ruling concerned the effect of a plan authorized by the company, which permitted its employees to elect the tax status. The revenue ruling precluded the company from providing such an alternative for employees. The action of two IBP employees is not interchangeable with the action of the company itself.

Here, the corporation did not set up alternative choices; only by the circumstances of the events occurring in this instance did the two employees elect to waive their favorable tax status. There is absolutely no relationship between the options involved here and the options held by the other employees. The effect of the waiver by Schwieger and Vande Stouwe cannot in any way affect the options held by the other employees. Furthermore, any qualified option held by any other employee has long been expired because the qualified option plan was terminated by Congress in 1976 and all options then existing were grandfathered out by May 21, 1981.

Additionally, the treasury regulations provide support for the proposition that this court's decision will not have the effect of disqualifying every option granted. "The determination of whether an option is a statutory option is made as of the date such option is granted." Treas.Reg. § 1.421–7(b)(3)(i) (1986). "In general, conditions imposed upon the exercise of an option will not operate to make ineffective the granting of the option." Treas.Reg. § 1.421–7(c)(3) (1986).

Finally, the effect of Rev.Rul. 73–26 can be further minimized. This court has previously held that "[r]evenue rulings are not binding upon the courts and are of little aid in interpreting statutes. Any conflict between a revenue ruling and a statute must of course be resolved in favor of the stat-ute." *Mercantile Bank & Trust Co. v. United States,* 441 F.2d 364, 368 (8th Cir. 1971) (citations omitted).

In summary then, the primary force of IBP's argument rests on an inapposite revenue ruling, which may be disregarded because of its conflict with the statute concerned. Thus there is no substance to IBP's assertion of the exceptional public importance of this decision and the alleged effect of plaintiffs' transaction on other option holders. There is no evidence in this record for IBP to contend otherwise. Congress terminated the qualified stock option plan in 1976; only those options in existence until 1981 were affected by the previous rulings of the IRS. Since all options not exercised by May 21, 1981, lost their qualified status, there are no longer outstanding any qualified stock options which can be affected by our judgment here. Although Congress passed a similar incentive option plan in 1981, 26 U.S.C. § 422A, the sequence of exercise provisions in that section were recently repealed. Tax Reform Act of 1986, Pub.L. No. 99–514, § 321, 1986–9A U.S.Code Cong. & Admin.News 136. Therefore, such incentive options no longer must be exercised in the order granted. This case clearly has no consequence beyond the immediate parties.

### The "Conflict" with *Langer*

■ IBP urges that our decision contradicts *Langer v. Iowa Beef Packers, Inc.,* 420 F.2d 365 (8th Cir.1970). To the contrary, as discussed in our earlier opinion, *Langer* supports our judgment. The holding in *Langer* must be applied in light of the existing law of contracts. Without that substantive base, that decision can have no meaning. *See Schwieger,* 802 F.2d 1032, 1036 (8th Cir.1986).

### Assumption that Market Price was Below the Option Price

■ Petitioners now assert as grounds for rehearing that the court erroneously assumed that outstanding options were issued at higher prices than the price of the existing stock. They state that Vande Stouwe's outstanding option had an adjusted price of $10.167, whereas the price of

the stock on the date of his termination was $38.125. Petition for Rehearing at 10. The petitioner cites nothing in the record to support this contention. There exists no entry in the record indicating the price of the stock on the date of Vande Stouwe's termination. However, if in fact that was the price, then our assumption may have been incorrect. Regardless, this fact cannot change the result reached. The price differential was only one of five factors cited in the opinion as relevant to its decision. Alternatively, our statement could be clarified by reference to the fact that the harshness occurred because the prior outstanding option was at a price greater than the subsequent option prices. Further, as noted in our opinion, the reason that Vande Stouwe could not exercise the vested portions of his subsequent options was that IBP's termination of his employment prevented the natural lapse of the prior, higher-priced option. *Cf. Langer*, 420 F.2d at 368–69.

### Waiver of a Condition Precedent

■ Petitioners characterize the option agreement as creating only a duty for IBP to perform subject to the blockage rule, and with no duty whatsoever on the part of Schwieger and Vande Stouwe. This argument misstates the agreement. Schwieger and Vande Stouwe were given an option to purchase stock. In order to receive favorable tax treatment, they had a duty to exercise that option in accordance with the provisions of 26 U.S.C. § 422(b)(5) (1982). By waiving their duty to comply with the blockage rule, plaintiffs will not be afforded any tax benefits. This waiver does not affect IBP adversely. Thus, their interpretation is unfounded.

The petition for rehearing is denied.

ROSS, Circuit Judge, dissenting.

This case involves employment contracts between IBP and two former executives of IBP, John L. Schwieger and Dwayne Vande Stouwe. These contracts provided that, in addition to other compensation, the employees would receive options to purchase IBP stock. Stock options were given to Schwieger and Vande Stouwe under their contracts subject to a provision in the contracts known as a "blockage rule". This provision reads as follows:

> The option granted by this Agreement shall not be exercisable while there is outstanding [within the meaning of Internal Revenue Code Section 422(c)(2)] any qualified stock option, which was granted, before the granting of such option, to such individual to purchase stock in his employer corporation or in a corporation which (at the time of the granting of such option) is a parent or subsidiary corporation of the Company, or is a predecessor corporation of any such corporations at a price higher than that provided in this Agreement.

This "blockage rule" provision was enforced by IBP when Schwieger and Vande Stouwe attempted to exercise later issued, lower-priced options without having exercised earlier issued, higher-priced options. Schwieger and Vande Stouwe then filed this suit, with Schwieger alone asking for almost two million dollars in damages.

The district court held that IBP could not be sued for abiding by the terms of its contract. A panel of this court reversed that decision based on the majority's view that "the terms of the blockage rule served only as an inducement to attract key employees with an investment plan which provided compensation with capital gains treatment." *Schwieger v. Iowa Beef Processors, Inc.*, 802 F.2d 1032, 1035 (8th Cir. 1986). Operating under that premise, the court then looked to Iowa law and found, in *Langer v. Iowa Beef Packers, Inc.*, 420 F.2d 365 (8th Cir.1970), authority for the principle that provisions in stock option contracts can be deleted where the provision "would result in a forfeiture of vested rights." *Schwieger, supra*, 802 F.2d at 1035.

I disagree first with the majority's interpretation of the blockage rule. In my view, the blockage rule does more than "attract key employees" by giving them

compensation with capital gains treatment. It operates also

> to advance the interests of the Company by providing officers and other key employees having substantial responsibility for the direction and management of the Company with an additional incentive and to encourage stock ownership, to increase their proprietary interest in the success of the Company, and to encourage them to remain in its employ.

*Id.* at 368 n. 6 (quoting from IBP's stock option plan). Of these stated purposes, the blockage rule most plainly advances the employer's goal of giving employees a true proprietary interest in the success of the company. In fact, that is the objective which Congress was attempting to further when it passed the blockage rule and the other statutory requirements of I.R.C. § 422. *See, e.g.,* Rev.Rul. 73–26, 1973–1 C.B. 204, 205 (by passage of I.R.C. § 422, "Congress intended an optionee to occupy a position similar to a shareholder"). Thus, contrary to the majority's view, the blockage rule is not solely for the employee's benefit, as it also advances the employer's interest in giving employees a proprietary interest in the company and thereby motivates employees to work harder to make the company a success.

I also disagree with the majority's application of *Langer* to this case. In *Langer,* an employee was faced with losing his IBP stock option rights because IBP had unilaterally assigned his employment contract to Oscar Mayer & Company. At that time, IBP's stock option agreement provided that the options terminated where the employee's employment ceased "for any reason, whether voluntary, [or] involuntary". This court ruled that this provision did not apply, stating: "As we interpret * * * [the provision], it does not mean that termination of the option could result from the sale of the optionee's employment contract without prior notice thereof to the optionee." *Langer, supra,* 420 F.2d at 369.

In the case at bar, the majority does not even pretend to interpret the blockage rule provision. Instead, the majority writes the provision out of the contract entirely. That decision is certainly not supported by *Langer.*

The majority also based its holding on a rule that a party may waive a condition precedent where the condition exists solely for his own benefit and where the other party has no interest in the performance of the condition. This rule has no application to the case at bar because, as discussed above, the blockage rule is not for the sole benefit of the employee. The blockage rule is an important part of the stock option plan which, among other things, advances the employer's interest in giving its employees a proprietary interest in the company. Moreover, it is certainly odd to say that IBP has no interest in the blockage rule where its nonperformance may ultimately cost the company almost two million dollars as to just one employee.

Because the majority's panel decision (1) is clearly wrong, (2) if permitted to stand, will serve as precedent for the proposition that courts may freely delete contractual provisions whenever the court dislikes a particular provision, and (3) may have adverse contractual and tax effects far beyond this case, I respectfully dissent from the denial of the petition for rehearing.

### ON PETITION FOR REHEARING EN BANC

Petition for rehearing en banc filed by appellee, Iowa Beef Processors, Inc., has been considered by the court and is denied by reason of the lack of majority of active judges voting to rehear the case en banc. Judges Ross, John R. Gibson, Fagg, and Bowman would have granted the petition.