**RESTLAND MEMORIAL PARK OF DALLAS**

v.

**UNITED STATES of America.**

**No. CA 3-4572-C.**

United States District Court,
N. D. Texas,
Dallas Division.

Feb. 19, 1974.

Sam G. Winstead and William D. Jordan, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., for plaintiff.

Frank D. McCown, U. S. Atty., Martha Joe Stroud, Asst. U. S. Atty., Eugene G. Sayre, Atty., Tax Div., Dept. of Justice, Dallas, Tex., for defendant.

## OPINION

WILLIAM M. TAYLOR, Chief Judge.

This is a suit to recover taxes paid under protest, predicated on the refusal of an allowance of an exemption under § 501(c)(13) of the Internal Revenue Code of 1954.

Mr. George Young acquired a part ownership in the for-profit predecessor cemetery of Plaintiff cemetery in 1935. In 1941, he became in essence the sole owner of the predecessor corporation. In 1954, he organized Plaintiff as a non-profit corporation under Texas law and with an eye on two Federal tax cases construing § 501(c)(13), which cases are now of dubious efficacy. Mr. Young then sold his stock in the predecessor profit corporation to Plaintiff. Plaintiff, having control of the profit corporation, redeemed the few remaining outstanding shares and retired them as treasury stock. Then Plaintiff dissolved the for-profit subsidiary. Since that time, Plaintiff has maintained the same formal organizational status.

As consideration for the sale of his stock in the predecessor corporation, Mr. Young received a long term note with a sum certain to be paid to him in equal installments over several years. This note bore no interest.

The next year, Mr. Young sold Plaintiff 11.343 acres of land in exchange for 20% of the gross receipts from the sale of lots, 10% from the gross receipts of niches and crypts in any mausoleum or columbarium that might be built on those acres, as the sales occur. The contract entered into stated that no maximum price could be determined. But it did require minimum yearly payments after a certain number of years.

In 1956, Plaintiff removed the cemetery dedication from 2.365 acres of land owned by it. It sold them to Mr. Young for $10,165.00. Mr. Young then built a funeral home on this land and incorporated this business as a profit corporation, Restland Funeral Home, Inc. (hereinafter called Funeral Home). Plaintiff at the time of sale entered into a lease for part of the space in the building to be constructed. This lease was used as the collateral for the construction loan for the building.

In March, 1961, Plaintiff bought 104.-677 acres of land from Mr. Young and his wife. The terms and conditions of the sale were essentially the same as in the 1954 sale. A separate agreement, dated the same day as the sale agreement, recited that upon a condemnation sale of any part of this property, Young and wife were to receive one-half of the proceeds and Plaintiff the other half. In also provided that if Plaintiff were to deem any part of the property involved in this sale unusable as cemetery property, it would convey that portion back to Young and wife for no additional consideration.

In 1964, the state condemned approximately 20 acres of this land for a freeway and the parties split over $600,000.-00 in receipts. The condemnation cut off 25 acres from the main body of the cemetery, leaving the two plots separated by an interstate highway. Plaintiff's board deemed this land unsuitable for cemetery purposes and reconveyed it to Mr. Young and wife.

In March of 1965, the minimum payments due under the 1954 and 1961 contracts were delayed for three years by agreement of the parties without fur-

ther consideration. No payments of any sort have ever been made under these contracts and the payments were not delayed by agreement after the first three year delay.

Three months after the delay of the payments, Plaintiff purchased another 25 acres, this time from a trust that had been settled by Mr. Young upon his daughter. The only material differences between this contract and the prior contracts is that it calls for a sale price of 15% of the gross sales of lots, niches and crypts. A minimum payment was required by the contract in 1965 which was never made. Since then, lots have been sold off from the land purchased from the trust and the correct payments have been made to the trust.

Plaintiff was denied exempt status by I.R.S. in 1960 and has filed regular corporate income tax returns since that time. It reported taxable income in the fiscal years ending June 30, 1965, 1966 and 1969. These same years, it filed claims for refunds which were denied at each step of the administrative process and this suit was timely filed thereafter.

Plaintiff has been apparently a quite successful operation. But it has entered into a few business dealings for which an exemption from taxation under §

501(c)(13) of the Internal Revenue Code of 1954 [1] must be denied.

Traditionally, there are three exemptions for cemeteries under this section.[2] The first is "cemetery companies owned and operated exclusively for the benefit of their members . . ." The second is cemetery companies ". . . not operated for profit, . . ." The third is ". . . any corporation chartered solely for burial purposes as a cemetery corporation and not permitted by its charter to engage in any business not necessarily incident to that purpose, no part of the net earnings of which inures to the benefit of any private shareholder or individual." [3]

Plaintiff has not shown that it has met the requirements of any of the three tests.

### I.

Plaintiff's land purchases were by means impermissible under § 501(c) (13). The case of Rose Hills Memorial Park Association v. United States,[4] is clearly in point. The only real difference between Restland's situation and Rose Hill's situation was that the initial purchase of land in Rose Hills was the purchase similar to the purchases by Restland. This is not a material

---

1. Section 501(c)(13):
   "(13) Cemetery companies owned and operated exclusively for the benefit of their members or which are not operated for profit; and any corporation chartered solely for burial purposes as a cemetery corporation and not permitted by its charter to engage in any business not necessarily incident to that purpose, no part of the net earnings of which inures to the benefit of any private shareholder or individual."

2. Commissioner v. Kensico Cemetery, 96 F. 2d 594 (2d Cir., 1938), and Forest Lawn Memorial Park Assn. v. Commissioner, 45 B.J.A. 1091 (1941).

3. The government contends in its brief that Congress intended that there be only two classifications of exempt cemeteries. It would say that the first two exemptions listed herein are but really one. If one reads 61 Cong.Rec., pp. 5824, 7487–7490, the Sen-

ate debate in which the last two exemptions were given life, the government's contention appears to be borne out. One could even go further and say that Congress' intent was to set up two classifications of exemptions. One for unincorporated organizations in the sense that the term company is defined in In Re Midwest Athletic Club, 161 F.2d 1005 (7th Cir., 1947). The other being non-profit corporations. If this construction were used, plaintiff would have to meet that one set of criteria for corporations or fail to gain an exemption.
But in view of the facts of this case, it is unnecessary to change the construction of the statute put upon it by prior courts.

4. 463 F.2d 425 (Ct. of Claims, 1972), cert. den. 414 U.S. 822, 94 S.Ct. 122, 38 L.Ed.2d 55 (October 9, 1973). See this case for a full exposition of the reasoning behind these decisions.

difference between the cases. The timing of the transaction is not important. What is important is the nature of the benefit to the seller and the resulting relationship between the parties.

*Rose Hills* was a third exemption case as that is the exemption that Rose Hills was contending was applicable. The Court of Claims in *Rose Hills* denied an exemption because such a purported sale of land is really a contribution to capital. The seller in these instances retains what amounts to an equity in the land. He is not to receive a sum certain at a certain rate of return, he cannot expect payment by a set time. The question is who is taking the risk and benefits involved? In the classic debt vs. equity split, there are various characteristics of each which must be taken into account to determine if there is a debt or an equity. The principal ones are limited or certain risk and limited or certain prospective profit. In the debt situation, the investor takes a limited risk in turn for a limited profit. In the equity situation, the investor takes an unlimited risk for an unlimited prospect for profits. In our situation, the sellers of the land have an unlimited prospect for profits. As the value of cemetery lots increases, their profit prospects increase at the same rate. They are not limited to a certain sum above the value of their property as of the date that the contracts were entered into.

In the reverse absurd example, if there were no market for cemetery lots, no payments would ever be made.[5] The sellers risk and profit potential in our present situation are only limited by their share of the pie 20%, 15% or 10% of the gross receipts.

Knollwood Memorial Gardens v. Commissioner of Internal Revenue, 46 Tax Court 764 (1966) disposes of the question of whether these land transactions meet the first two tests of § 501(c)(13). The facts in *Knollwood* were much more complicated than ours are. But the facts found by the Tax Court to be operative and which that Court based its conclusion of denial of exemption are again essentially the same as ours.

The Tax Court reasoned that a contribution to capital contemplates a return on the investment. Therefore, it is intended by the parties and the net result is that a portion of the profits of the venture are to be and are paid to the investor. In turn, the cemetery is being operated at least partially in order to provide a return for the profit of the investor who is not acting as a member of the cemetery company.

## II.

The second ground for denying an exemption to Plaintiff is its close relationship to the funeral home, a credit life insurance company, and a trust company.[6] These entities have interlocking management, directorship and ownership. They even share a common name "Restland" which was used as the watchword in advertising campaigns. One official of the combined business even spoke of one of the corporations as a "department" at his deposition. There are various contractual arrangements between Plaintiff and the other entities that the Government does not contend to be unfair to Plaintiff or impermissible. The attack is on two bases.

First, Plaintiff does not charge Funeral Home for the use of its chapels. It charges all other funeral homes a twenty-five dollar fee for such use. This is a small but clear benefit that inures to someone other than Plaintiff or its members.

Second, and more important, is the relationship between Plaintiff and the other entities. Plaintiff was the first

---

5. It must be kept in mind that the minimum payments have been waived in actuality by the sellers.

6. The insurance company and the trust company are also 99+ per cent owned by Mr. Young. The trust company appears to be a shell at the present time.

**168**

formed and built up a store of goodwill in the name "Restland". After this, Funeral Home and the other corporations came along and traded on the goodwill reposed in the name "Restland". No doubt the goodwill has increased over the years by the joint efforts of all four entities, but the questions are have benefits lawfully belonging to Plaintiff inured to other persons and has Plaintiff been run for profit. The answer to both questions must be yes. The other corporations have been trading on Plaintiff's goodwill for years. The four have been held out to be and have functioned as parts of one integrated business. Aside from the land transactions, the goal has been to maximize profits. The four entities operations have been co-ordinated to this end. The entwinement is impermissible. Plaintiff has been operated to produce maximum profits in the other entities. It has been operated with a profit motive and its valuable goodwill has been entwined with the goodwill of the other corporations and used to produce profits for them.

### III.

The third major contention of the Government is that part of the net earnings of Plaintiff have inured to individuals, the principal officers of Plaintiff. The Court agrees that Plaintiff has not shown that the payment of various club bills incurred by its officers were intended as compensation. Also, when the practices of Plaintiff's two major competitors are looked at, it is shown that the practice was not common among them. The one major competitor that was a not-for-profit cemetery did not pick up club bills or provide automobiles for its officers. The other major competitor, a for-profit corporation, did provide similar benefits but on a much smaller scale.

### CONCLUSION

Plaintiff has not shown that it has met any of the three exceptions of § 501(c)(13). The above described deal-ings just do not fit within the confines of the exemptions allowed by Congress. Defendant's attorney is requested to prepare and submit an appropriate order.