THE JOHN D. ROCKEFELLER FAMILY CEMETERY CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1126-72.     Filed December 17, 1974.

*James A. Glasscock, Jr.,* and *Victor F. Keen,* for the petitioner.
*H. Stephen Kesselman,* for the respondent.

FORRESTER, *Judge:* Respondent has determined deficiencies in income tax for 1967 and 1968 in the respective amounts of $1,630.06 and $1,367.04. The primary issue for our decision is whether petitioner qualifies as an organization described in section 501(c)(13)[1] exempt from income taxation under section 501(a). If not, then we must decide whether petitioner may deduct its maintenance and repair expenses under section 162(a).

---

[1] All statutory references are to the Internal Revenue Code of 1954, unless otherwise specified.

### FINDINGS OF FACT

All of the facts have been stipulated and are so found.

Petitioner, the John D. Rockefeller Family Cemetery Corp., a corporation formed under the laws of New York, had its principal office at New York, N. Y., at the time the petition was filed. Petitioner filed the annual return required of an organization exempt from income tax (Form 990) on a calendar year basis for 1965 through 1968 with the district director of internal revenue, Manhattan, New York.

On March 6, 1939, petitioner was incorporated under section 105 of the Membership Corporations Law of the State of New York which provides for the creation and regulation of family cemetery corporations. Section 2 of the Membership Corporations Law defines "membership corporation" as follows:

> The term "membership corporation" means a corporation not organized for pecuniary profit, incorporated under this chapter, or under any law repealed by this chapter; but unless hereinafter specifically provided does not include a membership corporation created by a special law or a corporation subject to any of the provisions of the insurance law.

On November 14, 1938, John D. Rockefeller, Jr., conveyed land to petitioner under an indenture restricting the land's use to burial of members of his family.

Petitioner was chartered solely for burial purposes as a family cemetery corporation and has no shareholders. Petitioner's charter does not permit it to engage in any activity other than management, care, and preservation of the cemetery or in any business not necessarily incident to burial purposes, and the petitioner has never engaged in any other activity.

From the time of its acquisition by petitioner, petitioner's land has been exempt from real property taxation in accordance with section 420 of the Real Property Tax Law of New York and its predecessor sections. This section and its predecessors all provided in relevant part that real property of a cemetery corporation should not be exempt from taxation (1) if the corporation were not in good faith organized or conducted exclusively for cemetery purposes, (2) if any officer, member or employee received or would be lawfully entitled to receive any pecuniary profit, except reasonable compensation for services rendered, from the operations of the cemetery corporation, or (3) if organization of the corporation for cemetery purposes were a

guise or pretense for directly or indirectly making any other pecuniary profit for the corporation, its members, or employees.

On May 11, 1960, John D. Rockefeller, Jr., died and bequeathed $200,000 to petitioner; the principal and income therefrom were to be used for the perpetual care of the cemetery. Petitioner invested the $200,000 paid over to it in satisfaction of the bequest and has used the income therefrom to pay its operating and maintenance expenses.

Petitioner's funds have always been used solely for improving, maintaining, and embellishing its cemetery property. Petitioner executed a bond to the surrogate of Westchester County, N.Y., wherein the cemetery is situated, as required by section 105 of the Membership Corporations Law to insure faithful preservation and application of petitioner's funds. As that section also requires, petitioner has accounted at least annually to the surrogate for all receipts and expenditures on account of the funds in petitioner's hands.

By ruling dated March 15, 1940, the respondent held that petitioner was exempt from Federal income taxation under section 101(5), I.R.C. 1939. By letter dated July 2, 1968, the respondent advised petitioner that its exempt status was being revoked as of January 1, 1965.

During the years 1965 through 1968, petitioner's gross income was as follows:

|  | 1965 | 1966 | 1967 | 1968 |
|---|---|---|---|---|
| Dividends | $2,529 | $3,113 | $4,176 | $4,466 |
| Interest | 7,500 | 6,290 | 6,625 | 5,478 |
| Capital gains | 0 | 151 | 139 | 30 |
| Total | 10,029 | 9,554 | 10,940 | 9,974 |

During the years 1965 through 1968 petitioner incurred maintenance and repair expenses and miscellaneous expenses as follows:

|  | 1965 | 1966 | 1967 | 1968 |
|---|---|---|---|---|
| Maintenance and repairs | $7,803 | $7,881 | $8,635 | $2,994 |
| Miscellaneous | 1 | 1 | 0 | 25 |
| Total | 7,804 | 7,882 | 8,635 | 3,019 |

OPINION

The issue presented for our decision is whether petitioner was an organization described in section 501(c)(13) [2] during 1967 and 1968, and therefore exempt from Federal income taxation under section 501(a). Because we hold that petitioner was such an organization, we do not reach the issue of the deductibility of its maintenance and repair expenses under section 162(a).

Normally, if a taxpayer satisfies any one of the three mutually independent tests of section 501(c)(13), that taxpayer qualifies as an organization exempt from income taxation under section 501(a). *Commissioner v. Kensico Cemetery,* 96 F. 2d 594 (C.A. 2, 1938), affirming 35 B.T.A. 498 (1937). The language of section 501(c)(13) is identical to the language of its predecessor sections under which *Kensico* was decided.[3] Although some doubt has been cast on the result in *Kensico,*[4] the doubt extends only to what appears to many as a formalistic application of law to fact in that opinion. The controlling principle of law expressed in *Kensico* remains untarnished today—the presence of any one of the three mutually independent requisites for exemption from income taxation which are contained in section 501(c)(13) creates an exemption. 96 F. 2d at 596; *Forest Lawn Memorial Park Association, Inc.,* 45 B.T.A. 1091 (1941); *Knollwood Memorial Gardens,* 46 T.C. 764, 776 (1966); *Rose Hills Memorial Park Association v. United States,* 463 F.2d 425 (Ct. Cl. 1972).[5] Respondent's regulations also conform to the statute and case law on this point. Sec. 1.501(c)(13)-1(a) and (b), Income

---

[2] SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC.

(a) EXEMPTION FROM TAXATION.—An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle * * *
* * *

(c) LIST OF EXEMPT ORGANIZATIONS.—The following organizations are referred to in subsection (a):
* * *

(13) Cemetery companies owned and operated exclusively for the benefit of their members or which are not operated for profit; and any corporation chartered solely for burial purposes as a cemetery corporation and not permitted by its charter to engage in any business not necessarily incident to that purpose, no part of the net earnings of which inures to the benefit of any private shareholder or individual.

[3] Sec. 231(5), Revenue Act of 1926, 44 Stat. 9, 40; sec. 103(5), Revenue Acts of 1928 and 1932, 45 Stat. 791, 813, 47 Stat. 169, 193.

[4] *Knollwood Memorial Gardens,* 46 T.C. 764, 788 (1966).

[5] *Washington Park Cemetery Assn., Inc.,* T.C. Memo. 1963-268; *Rose Hill Memorial Park, Inc.,* T.C. Memo. 1964-240; and *Restland Memorial Park of Dallas v. United States,* 371 F.Supp. 164 (N.D. Tex. 1974), apply this rule. See also *Mercantile Bank & Trust Co. v. United States,* 441 F. 2d 364 (C.A. 8, 1971).

Tax Regs.[6]

This brief background is necessary to understand the complete novelty of respondent's position in the instant case. Respondent does not argue that petitioner has failed to meet any of the requisites of section 501(c)(13), and on the record before us, we cannot perceive how he could seriously do so. However, respondent contends that petitioner's compliance with section 501(c)(13) is irrelevant to the question of its tax-exempt status. He argues that section 501(c)(13) is impliedly restricted to "public" cemetery companies and that because petitioner is a family cemetery corporation, and admittedly "private" under any definition, petitioner cannot be an organization described by section 501(c)(13). Thus, respondent urges us to adopt a rule that if a taxpayer seeking tax-exempt status under section 501(c)(13) were not "public," then even compliance with all three requisites of that section would be unavailing.

We decline to adopt such a rule. Our function and responsibility is to interpret and apply the statute, not rewrite it. We think respondent's argument would be more appropriately addressed to Congress.

Nevertheless, because respondent steadfastly maintains that the present statutory language supports his position, we will undertake a short review of the statute's development and scanty legislative history.

The first exemption from income taxation that was provided for any sort of cemetery organization appeared in section IIG(a) of the Tariff Act of 1913, 38 Stat. 114, 172, as follows:

That the normal tax hereinbefore imposed upon individuals likewise shall be levied, * * * upon the entire net income arising * * * to every corporation * * *: Provided, however, That nothing in this section shall apply to * * * cemetery companies, organized and operated exclusively for the mutual benefit of their members * * *

The exemption was not changed until it was enacted as section 231(5) of the Revenue Act of 1921, 42 Stat. 227, 253, when it was amended to include cemetery organizations as follows:

Cemetery companies owned and operated exclusively for the benefit of their members or which are not operated for profit; and any corporation chartered solely for burial purposes as a cemetery corporation and not permitted by its charter to engage in any business not necessarily incident to that purpose, no

---

[6] But see Rev. Rul. 65-6, 1965-1 C.B. 229.

part of the net earnings of which inures to the benefit of any private stockholder or individual;

This language, which became section 501(c)(13), has since stood without material change.[7]

The legislative history of the long-standing exemption here relevant is found in the Senate floor debate regarding section 231(5) of the Revenue Act of 1921.[8] We have made reference to the debates before in interpreting section 501(c)(13), and we found that they "indicate rather poignantly the overriding concern that the Senators' benignancy be not perverted so as to abet those who would 'make money out of the burial of the dead.' "[9]

However, respondent extracts a few sentences from these debates and argues from them that the Senators were concerned that only "public" cemetery companies be entitled to the exemption. First, he points to a statement by Senator McKellar of Tennessee made while introducing an amendment that was in substance rejected by the Senate.[10] The Senator remarked in introducing his amendment that Tennessee had a law making cemeteries "substantially charitable organizations" and that "to tax these quasi-charitable organizations" seemed to the Senator a

---

[7] In 1970 Congress amended sec. 501(c)(13) to provide express applicability of the exemption to crematory operations. Pub. L. 91-618, sec. 1.

[8] 61 Cong. Rec. 7487-7490 (1921). Though the debate is of dubious significance, we consider it only because respondent bases a substantial portion of his argument on it. That Congress intended three separate and independent tests by enacting sec. 231(5) is conclusively shown by the "Statement of the Managers on the Part of the House," H. Rept. No. 486, 67th Cong., 1st Sess. (1921), 1939-1 C.B. (Part 2) 206, 220, which provided as follows:

"Amendment No. 365: This amendment adds to the list of organizations exempt from income tax not only cemetery companies owned and operated exclusively for the benefit of their members (as under existing law), but also such companies which are not operated for profits [sic], and any corporation chartered solely for burial purposes and not permitted to engage in any other business, if no part of its net earnings inures to the benefit of any private stockholder or individual. The House recedes with an amendment making clerical changes."

[9] *Knollwood Memorial Gardens,* 46 T.C. 764, 788 (1966). Apparently, this was the first occasion on which any court considered the debate in interpreting sec. 501(c)(13), perhaps because the wording of the statute is clear and unambiguous.

[10] *Provided,* That any incorporation [sic] chartered solely for burial purposes as a cemetery incorporation [sic] and not permitted by its charter to indulge in any business not necessarily incident to that purpose, shall be exempt from taxation upon its income, but nothing in the foregoing shall exempt shareholders individually in such corporation from taxation upon any dividend or distribution accruing to them from profits made by the corporation. Such incorporations [sic] shall be exempt from corporation tax upon their capitalization. [61 Cong. Rec. 7487 (1921).]

great injustice.[11] Thus, he proposed exempting them from tax while reiterating the imposition of tax on any dividends distributed to shareholders. The Senator also introduced a constituent's letter into the Record which stated that "a cemetery is essentially a quasi-charitable public concern and is usually a public charge and burden, either established and maintained by States, municipalities, and communities or by individuals on cooperative plans."[12]

Respondent seizes on the above-quoted language from the Record and attempts to parlay it into authority for his position. First, it should be noted that the law making cemeteries "substantially charitable organizations" referred to by the Senator was one mandating that cemetery corporations maintain a perpetual-care trust fund.[13] In many States, including Tennessee, such a fund is required of cemeteries including those operated for profit.[14] Thus, the Senator apparently desired to exempt from taxation all cemeteries whether or not operated for profit that were required by law to maintain a perpetual-care trust fund. Second, aside from the fact that the quoted portion of the constituent's letter does not lend any support to respondent's argument,[15] we think that no weight should be accorded to a letter of an interested party written in an unsuccessful attempt to lobby for a change in law when we are considering congressional intent. Respondent is grasping at straws.

Respondent next points to a statement by Senator McCumber of North Dakota in offering the amendment which brought section 231(5) of the Revenue Act of 1921 to substantially its final form. The Senator's remark was as follows:

I therefore suggest an amendment, which I hope [Senator McKellar] will accept, and if he will *I think there will be no objection to his amendment, using the usual words which are used when we desire to exempt a corporation or an individual who acts merely for charitable purposes.*[16] [61 Cong. Rec. 7489,

---

[11] 61 Cong. Rec. 7487 (1921).

[12] 61 Cong. Rec. 7488 (1921).

[13] 61 Cong. Rec. 7487 (1921).

[14] See Tenn. Code Ann. sec. 46-210 (1964).

[15] Respondent overlooked the introductory phrase of the letter which begins, *"Whether organized to operate for profit or not,* a cemetery is essentially a quasi-charitable public concern." 61 Cong. Rec. 7488 (1921) (emphasis supplied).

[16] The amendment was as follows: "No part of the net earnings of which inures to the benefit of any private stockholder or individual." To which Senator McKellar queried: "That would have the effect of exempting all that part of the profits which go to the trust fund to keep up the cemetery?" Senator McCumber replied: "Certainly, because that would not inure to the benefit of any stockholder or individual. It would simply inure to

7490 (1921).]

Respondent points to the above-emphasized language as manifest assurance that his argument correctly interprets the statute. We see nothing more in the remark than the Senator's belief that if a cemetery corporation were to meet the test of the amendment, then that corporation would be serving public purposes and would deserve the exemption.

Other statements made by Senator McCumber indicate further this belief:

Mr. McCUMBER. The object is to exempt them from any corporate taxes so long as they are exclusively engaged in the business referred to, and so long as all of their income is used to beautify the cemetery, and to be expended upon the cemetery, and no part of its profits are to inure to the benefit of any stockholder or individual.

Mr. KING. But suppose some of its profits are distributed in the form of dividends; while it is true that the distributees would pay their normal taxes or their surtaxes according to the extent of their incomes, I see no reason why the corporation itself in a case of that kind should not pay its corporate tax.
* * *
Mr. McCUMBER. If the profits are distributed, it comes without the provision of this amendment.

It permits the profit to be used for public purposes and for the most worthy purposes for which it could be used, the keeping up of the cemetery.

Mr. KING. * * * I know that many of the corporations have charged extravagant prices for the lots which they have sold, and have made very large profits. Corporations of that character ought to pay the same as other corporations organized for the purpose of making profits, whether in trade, or commerce, or anything else.

Mr. McCUMBER. If all profits are utilized for beautifying the cemetery and keeping it up, they ought not to have to pay. [61 Cong. Rec. 7490 (1921).]

What respondent advances as a threshold condition for exemption under section 501(c)(13) is nothing more than a conclusion by Congress, and subsequently by the courts, that once a cemetery organization meets one of the three requisites of section 501(c)(13), it is deemed to serve public purposes and to provide a public benefit.

Moreover, Senator McCumber's amendment affected only the third independent test of section 231(5) of the Revenue Act of 1921. When section 501(c)(13) was enacted in 1954, Congress had ample opportunity to revise the section if it were dissatisfied

the benefit of the organization for the purposes set forth." 61 Cong. Rec. 7490 (1921).

with the case law interpreting that section's predecessors as providing three distinct, independent tests.

Other Senators' remarks have been brought to our attention, but we think these likewise do not support respondent's position.[17]

Respondent presses his "public purposes" argument further, stating that under section 501(c) "Each and every organization exempted is concerned with the public welfare, or the alleviation of a public burden which would otherwise fall to local or federal government, or is in some way quasi-charitable in nature." If respondent means by this that none of the organizations described in section 501(c) serve private interests, a glance at the statute indicates otherwise, the most glaring exceptions being private clubs, fraternal societies, veterans' organizations, and labor organizations. Although we have no doubt that these organizations often do much to enhance the public good, we cannot perceive how they can be classified in any meaningful sense as "public" organizations. Moreover, it would seem that cemeteries serve the public good albeit in different but none-theless real ways, for example, by providing an aesthetic and dignified repository for human remains. Conversely, it also seems that to the extent petitioner's cemetery is concerned with the welfare of the people who have been or will be buried there, that to no lesser extent a private club, fraternal society, veterans' organization, or labor organization is also concerned with serving the private group which comprises its members. We think it significant that Congress enacted a special exemption provision for cemetery organizations as well as for other types of organizations which would be unable to meet the stricter 501(c)(3) tests which require service to public interests rather than to private ones. Sec. 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs.

We think the present statutory language of section 501(c)(13) will not support the requirement which respondent would have us read into it. Petitioner is an organization described by section 501(c)(13) as presently written. If only public cemetery

---

[17] See, e.g., Senator Pomerene's remarks regarding cemeteries that dedicate part of their property to burial of paupers. 61 Cong. Rec. 7489 (1921).

companies are to benefit from the section, Congress is the proper forum to change the rule.

*Decision will be entered for the petitioner.*